UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:  18-CV-21587-UU

ALEX M. CAVE,

                 Plaintiff,

vs.

JULIE L. JONES, in her official capacity as
Secretary of the Florida Department of
Corrections; WEXFORD HEALTH
SOURCES, INC., an out of state corporation
registered and doing business in Florida; DR.
DORA A. GAXIOLA, in her individual and
official capacity; RICKEY ROWE, in his
individual and official capacity; DR. OSCAR
ORTEGA, in his individual and official capacity;
MARIE LOUISSANT, in her individual and
official capacity; JOHN DOE NO. 1, in his
individual and official capacity; JOHN DOE
NO. 2, in his individual and official capacity;
CPT. GREGORY HINES, in his individual and
official capacity; SGT. MONTEL, in his
individual and official capacity; SGT PATTON,
in his individual and official capacity; OFF
WILLIAMS, in his individual and
official capacity; and OFF. ALEXZANDER, in
His individual and official capacity;

                 Defendants.
_____/

## **DEFENDANT'S, WEXFORD HEALTH SOURCES, INC. MOTION TO DISMISS**

Defendant, WEXFORD HEALTH SOURCES, INC. ("Wexford"), pursuant to

Fed.R.Civ.P. 12(b)(6) and 12(f) files this its Motion to Dismiss Plaintiff's, ALEX M. CAVE

("Plaintiff") Complaint [D.E. 1] and states the following in support thereof:

## **MOTION**

1.  The allegations in the Complaint do not state a claim upon which relief can be granted.

2.  Therefore, the Complaint should be dismissed.

3.   Additionally, the Complaint does not state a viable claim for punitive damages more specifically shown below.

4.  Therefore, the punitive damage claims should be stricken.

## **MEMORANDUM OF LAW**

**I.**  **INTRODUCTION**

In Count I of the Complaint, Plaintiff alleged that Defendant, Wexford violated his rights under 42 U.S.C. § 1983 by its "deliberate indifference to a substantial likelihood of serious harm or serious medical need" through its employees at the Everglades Correctional Institution, as it "provided inadequate medical treatment that amounted to deliberate indifference to a serious medical condition." (¶ 119)  In Count II, Plaintiff  alleged that Defendant, Wexford through its employees was negligent insofar as it "provided inadequate medical treatment to [Plaintiff]" (¶ 128) and transported him to the hospital not by ambulance, but by van, the travel time for which was allegedly too long (¶ 130).

Wexford  moves this Court to dismiss the Complaint for the following reasons: **A.** Plaintiff has failed to state a claim upon which relief can be grated for Deliberate Indifference; **B.** Wexford is immune from Plaintiff's negligence claims pursuant to § 768.28, Florida Statutes;  and **C.**  Plaintiff has failed to comply with the presuit requirements to bring a medical negligence claim pursuant to F.S. §766.104 –  § 766.106.

**D.** Furthermore, this Court should strike Plaintiff's punitive damages claim as they are not supported by fact or law.

**II.   ARGUMENT**

### A. PLAINTIFF FAILED TO STATE A CLAIM FOR DELIBERATE INDIFFERENCE.

#### 1.   WEXFORD'S ACTIONS, AS ALLEGED, DO NOT EQUATE TO DELIBERATE INDIFFERENCE.

"'[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain,' which is prohibited by the Eighth Amendment." Harris v. Leder, 519 Fed.Appx. 590, 595 (11th Cir. 2013) (citing Estelle v. Gamble, 429 U.S. 97, 104, (1976) (internal quotation    marks omitted)). "To establish deliberate indifference to a serious medical need, an inmate must show: (1) an objectively serious medical need that, if left unattended, poses a substantial risk of serious harm (the objective component); and (2) that the response made by public officials to that need was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law (the subjective component)." Harris, 519 Fed.Appx. at 595-96 (internal quotations and citations omitted). "Disagreement over a matter of medical judgment does not constitute cruel and unusual punishment." Id. at 596. "[T]he question of whether governmental actors should have employed additional…forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." Id. (citing Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting Estelle, 429 U.S. at 107)).

Additionally, there must be a showing that the acts of the medical defendants were intentional or reckless. Duff v. Prison Health Services, 2011 WL 4542507 at *8 (M.D. Fla.

2011) (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 833-38 (1994); <u>Hill v. Dekalb Regional Youth Detention Center</u>, 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that the Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law)). "The deliberate indifference standard is a demanding one, and a showing of negligence is never enough, as the Supreme Court has stated that 'a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment…'" <u>Duff</u>, 2011 WL 4542507 at *8 (quoting <u>Estelle</u>, 429 U.S. at 104, 106). <u>See also</u> <u>McElligott v. Foley</u>, 182 F.3d 1248, 1256 (11th Cir. 1999) (holding that failure to diagnose an inmate's colon cancer did not constitute deliberate indifference, even though it could be deemed extremely negligent).

"In order to properly establish the subjective component of the deliberate indifference analysis, the plaintiff must show that: (1) the defendants subjectively knew that a substantial risk of harm existed, (2) they disregarded that substantial risk, and (3) their conduct in disregarding that risk was more deliberate than mere negligence." <u>Williams v. Arnold</u>, 207 Fed.Appx. 980, 984 (11th Cir. 2006). "To establish the subjective component of deliberate indifference, the plaintiff must essentially show that the defendant intended to punish the plaintiff by depriving the plaintiff of necessary medical care." <u>Id.</u> at 984. "[W]hen a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." <u>Waldrop v. Evans</u>, 871 F.2d 1030, 1035 (11th Cir. 1989).

<u>See also</u> <u>Miller v. Correctional Medical Services, Inc.</u>, 2010 WL 3723998 (M.D. Ala. 2010) (dismissing plaintiff's § 1983 claims arising from inmate's death from sepsis due to defendants' failure to properly treat inmate's decubitus ulcers, or bed sores, on his body; plaintiff's allegations that defendants failed to properly diagnose and treat the inmate,

misprescribed medication, failed to provide adequate or timely examinations, appropriate monitoring of medical conditions, appropriate plans of care, assessment of underlying medical conditions, and failed to follow internal policies and protocols for patient records, monitoring and treatment, may show gross negligence or medical malpractice, but did not rise to the level of deliberate indifference); Williams v. Arnold, 207 Fed.Appx. 980, 985 (11th Cir. 2006) (concluding that jail officials' delays in obtaining inmate's prescription medications for inmate's serious medical condition did not constitute deliberate indifference to support § 1983 claim for Eighth Amendment violation); Deese v. City of Jacksonville, 2008 WL 5158289 at *12 (M.D. Fla. 2008) (concluding that defendants' treatment of inmate's sepsis, infected toe, and gangrene, which eventually led to amputation of leg, did not rise to level of deliberate indifference); Lee v. Alachua County, 2011 WL 2580162 (N.D. Fla.  2011) (dismissing      inmate's  §  1983  claim on grounds that alleged medical treatment of inmate's severe stomach virus did not rise to level of  deliberate  indifference;  the  defendants'  failure  to  treat  the  inmate  within  the  medical department and the nurse's recommendation that the inmate simply stay in bed and drink plenty of  water until the virus ran its course did not constitute deliberate indifference—disputes in medical judgment do not rise to the level of deliberate indifference); Schneider v. Parker, 2011 WL 722759 at *4 (M.D. Fla. 2011) (dismissing inmate's § 1983 claim on grounds that alleged medical treatment of inmate's staph infection and delay in such treatment did not rise to level of deliberate indifference; inmate's claim essentially disagreed with course of treatment prescribed and thus, fails to state a viable claim of deliberate indifference to medical care); Kidd v. Maryweather, 2007 WL 2206847 at *6 (M.D. Ala. 2007) (concluding that treatment of inmate's spider bite and resultant staph infection and pneumonia and inmate's contention that he should have been placed in a medical observation unit and prescribed other antibiotics did not constitute

deliberate indifference).

With regard to the subjective analysis of the deliberate indifference claims, Plaintiff's allegations, even if assumed to be true for the purposes of this motion, fail to satisfy the subjective component of deliberate indifference. There are absolutely no allegations that would indicate that Wexford's alleged actions were intended to punish Plaintiff or otherwise recklessly or intentionally hurt him.  Plaintiff does make allegations that "FDOC, Wexford Health and its employees -- Gaxiola, Rowe, Ortega, and Louissant—provided inadequate medical treatment to [Plaintiff] that amounted to a deliberate indifference to a serious medical condition." See e.g. (¶ 119).  But, there is nothing more.  Plaintiff never alleges that these actions were intended to hurt him, and therefore fails to state a cause of action.

Moreover, as to the requisite element of causation, Plaintiff has failed to allege that the Wexford's actions actually caused his injuries.   "As with any tort claim, the prisoner must show the injury was caused by the defendant's wrongful conduct." See Clark v. Tucker, 2014 WL 68646 (M.D. Fla. Jan. 8, 2014) 13-CV-2642 citing Goebert v. Lee County, 510 F.3d 1312 (11th Cir. 2007).  Specifically, there are no allegations that Plaintiff's condition resulting from his alleged brutal sexual battery was made worse by Wexford's actions.  As such, Plaintiff has failed to state a cause of action.

## 2. NEGLIGENCE IS INSUFFICIENT TO STATE A VALID CLAIM FOR DELIBERATE INDIFFERENCE.

"After incarceration, only the unnecessary and wanton infliction of pain… constitutes cruel and unusual punishment for been by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319 citing Ingraham v. Wright, 430 U.S. 651, 670 (1977).  "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more

than ordinary lack of due care for the prisoner's interest or safety." <u>Id.</u> at 319. "Accordingly, under [Supreme Court cases] <u>Estelle</u> and <u>Farmer</u>, deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) **by conduct that is more than mere negligence**." <u>McElligott v. Foley</u>, 182 F.3d 1248 (11 Cir. 1999).

Furthermore, the "Supreme Court has held that the Due Process Clause is not implicated by a state official's negligent act causing unintended loss of or injury to life, liberty, or property." <u>Faulkner v. Monroe County Sheriff's Office</u> 2010 WL 11469655 (S.D. Fla. Oct. 7, 2010) 10-CIV-10074 <u>citing</u> <u>Daniels v. Williams</u>, 474 U.S. 327, 329-336 (1986).

In Count I, Deliberate Indifference, Plaintiff alleges the duty, breach, "causation" elements of negligence rather than the elements for deliberate indifference. For instance, "The Defendants have a duty to [Plaintiff] to provide him adequate safety measures and to provide adequate medical treatment for his care." (¶ 122). "The Defendants breached that duty and as a result, were the proximate and direct cause of the pain and suffering that [Plaintiff] suffered in this matter. . . ." (¶ 123) Although titled "Deliberate Indifference" Count I is plead as a mere negligence claim. The law is clear that deliberate indifference requires conduct that is more than mere negligence.

### 3. PLAINTIFF HAS FAILED TO SPECIFIC ALLEGE ANY POLICY OR PROCEDURE EQUATING TO DELIBERATE INDIFFERENCE.

Because Wexford is a corporation, liability only attaches if an official unconstitutional policy or custom of the corporation caused the alleged deprivation of constitutional rights. <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691 (1978); <u>Buckner v. Toro</u>, 116 F.3d 450 (11th Cir. 1997) (extending the application of <u>Monell</u> to private

corporations performing traditional public functions); <u>Marsh v. Butler Cnty.</u>, Ala., 268 F.3d 1014, 1027 (11th Cir. 2001) (en banc) (stating that a "[corporation] is liable under section 1983 only for acts for which [the corporation] is actually responsible"), abrogated in part by <u>Bell Atl. Corp.</u>, 550 U.S. at 561-63. Therefore, a corporation's liability may not be vicarious. <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989); <u>Monell</u>, 436 U.S. at 694.

"A policy is a decision that is officially adopted by the [corporation], or created by an official of such rank that he or she could be said to be acting on behalf of the [corporation]. . . . A custom is a practice that is so settled and permanent that it takes on the force of law." <u>Sewell v. Town of Lake Hamilton</u>, 117 F.3d 488, 489 (11th Cir. 1997). "To establish a policy or custom, it is generally necessary to show a persistent and widespread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the [corporation]." <u>Depew v. City of St. Mary's</u>, 787 F.2d 1496, 1499 (11th Cir. 1986). The Supreme Court requires "a plaintiff seeking to impose liability on a [corporation] under §1983 to identify a [corporate] 'policy' or 'custom' that caused the plaintiff's injury." <u>Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown</u>, 520 U.S. 397, 403 (1997).

However, a plaintiff must do more than merely identify a policy—there must be proof the policy was created with "deliberate indifference to its known or obvious consequences." <u>Davis v. DeKalb Cnty. Sch. Dist.</u>, 233 F.3d 1367, 1375-76 (11th Cir. 2000); <u>see also</u> <u>Monell</u>, 436 U.S. 658. That is, "liability under §1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 483-84 (1986).

The Brown Court also narrowed the test for causation when it stated:

> [I]t is not enough for a §1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

Brown, 520 U.S. at 404 (emphasis in original). A plaintiff's burden is heavy, and the Eleventh Circuit described both the required showing and the reason for the heightened showing:

> This high standard of proof is intentionally onerous for plaintiffs; imposing liability on a municipality without proof that a specific policy caused a particular violation would equate to subjecting the municipality to respondeat superior liability—a result never intended by section 1983. As the Supreme Court has explained, '[t]o adopt lesser standards of fault and causation would open municipalities to unprecedented liability under §1983. In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a §1983 plaintiff will be able to point to something the city "could have done" to prevent the unfortunate incident.

Gold v. City of Miami, 151 F.3d 1346, 1351 n.10 (11th Cir. 1998); see also Brown, 520 U.S. at 415 (stating that "[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability").

While a corporation may be liable for deliberate indifference regarding medical care, claims of negligence are never enough to satisfy pleading requirements, as "should haves" are not grist for constitutional litigation. Estelle, 429 U.S. at 106; Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995).

The Eleventh Circuit reviewed the necessary showing in McDowell v. Brown, 392 F.3d 1283 (11th Cir. 2004). There, the plaintiff brought section 1983 claims against a Georgia county, claiming policies constituted and resulted in deliberate indifference to his medical needs. Specifically, the plaintiff claimed a policy of understaffing officers to transport inmates to the hospital caused a delay in his transport to the hospital.

In McDowell, an inmate was seen and treated for back pain at a local hospital on June 5, 1997. At 9:30 the next night, he reported an inability to urinate and difficulty walking, and medical personnel in the employ of a private medical contractor decided to send him back to the hospital. But transporting officers could only take one inmate at a time, and another inmate with trauma was transported first. The next morning, McDowell's transport was bumped several times by mental health inmates, as his condition was not considered an emergency and mental health transports were given priority by policy. Later, McDowell reported no feeling in his legs; was examined by a physician; his condition deemed emergent; and he was taken to the hospital by ambulance. A spinal abscess was diagnosed, and surgery was performed. After surgery, McDowell was an incomplete paraplegic. See McDowell at 1286-87.

McDowell arrived at the 11th Circuit after the district court granted summary judgment to the county. The court noted the longstanding rule that municipalities cannot be vicariously liable in section 1983 cases, and a plaintiff must show a custom or policy constituted deliberate indifference and a constitutional violation. Id. at 1289 (citing Monell, 436 U.S. at 692).

Page **10** of **20**

"This threshold identification of a custom or policy 'ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.' " McDowell, 392 F.3d at 1290 (quoting Bd. of County Com'rs v. Brown, 520 U.S. 397, 403-04 (1997)). That identification "prevents the imposition of liability based upon an isolated incident." Id. "Rather, the incident must result from a demonstrated practice." Id. The Eleventh Circuit concluded that "based on these instructions, McDowell must establish that the county's policy was to understaff the field division, and that this practice left the division unable to execute medical transports." Id.

McDowell could not "point to another occasion when the Jail's understaffing, and resulting inability to transport, contributed to or exacerbated an inmate's medical condition." Id. Therefore, the court determined this occurrence was an "isolated incident" rather than a "persistent" or "widespread" policy. Id. at 1290-91.

Next, the McDowell court analyzed whether the "municipality's action was 'taken with the requisite degree of culpability . . . with deliberate indifference to its known or obvious consequences.' " Id. at 1291 (citing Davis ex rel. Doe v. Dekalb County Sch. Dist., 233 F.3d 1367, 1375-76 (11th Cir. 2000)). The court found McDowell could not rely on a "generalized policy of understaffing, and a resultant inability to transport." Instead, he had to show the county had a "deliberate intent" to inadequately staff the jail. Id.

Relying on the Supreme Court's decision in Brown, the McDowell court found that in a case "where the plaintiff claims that a municipality's facially valid actions violated his constitutional rights . . . , 'rigorous standards of culpability and causation must be applied to

ensure that the municipality is not held liable solely for the actions of its employee.' " Id. (quoting Brown, 520 U.S. at 405). "Congress did not intend municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights." Brown, 520 U.S. at 415, 117 S.Ct. 1382 (emphasis in original). For municipal action "to meet this burden, a plaintiff must demonstrate that the lawful action was 'taken with deliberate indifference as to its known or obvious consequences.' " McDowell, 392 F.3d at 1291 (quoting Brown, 520 U.S. at 407). A "showing of simple or even heightened negligence is not enough." Id. (citing Brown at 407).

Applying these rules, the Eleventh Circuit found McDowell's argument without merit. The court determined there was no evidence the governing body knew of any potential medical concerns caused by its decision, and found the policy to be sound. Id. (stating that the policy to transport inmates or call an ambulance was a "clear, simple directive that said if you cannot transport with your resources you are to call an ambulance for needed medical transportation"). McDowell could not establish "that the Board would anticipate that inmates would not receive timely medical attention." Id. at 1292. Thus, the court found the alleged constitutional violation was not a "highly predictable consequence" of the county's failure to budget and staff the jail. Id. The court then considered causation. The county's "deliberate conduct" had to be the "moving force" behind McDowell's injury. Id. The court recognized the Supreme Court's caveat in Brown that "[t]o prevent municipal liability for a . . . decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." Id. (quoting Brown, 520 U.S. at 410). To "test the link" between the injury and the County's

conduct, the <u>McDowell</u> court looked "to whether a complete review of the budget decision (and the resulting understaffed Jail) reveals that the Board should have known that the injuries were a 'plainly obvious consequence' of that decision." <u>Id</u>. (stating that "[w]hile it may be true that the Board's budget decision would make a violation of his constitutional rights 'more likely,'" that alone cannot 'give rise to an inference that a policymaker's failure to scrutinize the [budget]. . . produced a specific constitutional allegation)(quoting <u>Brown</u> at 411). Again, relying on Brown, the court went on to state that "liability must be premised on a finding that "this" budget decision was 'highly likely to inflict the particular injury' McDowell suffered." Id. at 1292 (quoting <u>Brown</u> at 411) (emphasis in original). The McDowell court stated:

> McDowell did not proffer testimony that members of field division believed they could not perform medical transports because of understaffing. Additionally, McDowell did not demonstrate that the County was the moving force behind his injury, given that the Jail was instructed to request an ambulance to transport medical cases to Grady when the field division was unavailable. Finally, the record indicates that the consequences associated with the Jail's failure to transport McDowell to the hospital in a timely fashion never happened before. To hold a municipality liable for any conceivable constitutional violation, whether based on past concrete injury or mere speculation, would erode its ability to manage and govern. <u>Id</u>. at 1292-93.

Plaintiff has two methods to establish Wexford's unconstitutional policy: (1) an officially promulgated unconstitutional policy, or (2) a widespread unconstitutional and unofficial custom or practice created by a policymaker for Wexford. He must also allege the policy was created with knowledge that his injury was a highly probable consequence of the policy's creation.

Plaintiff's Deliberate Indifference claim (Count I) is incompletely pled. Where pleading minimums require allegations of specific policies, Plaintiff relies on bare bones allegations of amorphous policies "to minimize costs."  Further, the alleged policies are plead to include both FDOC and Wexford even further watering down the required specificity for alleging policies amounting to deliberate indifference.  See e.g. (¶ 66) ("Wexford Health and FDOC have a policy of requiring . . . ."); (¶ 118) ("FDOC and Wexford Health have an unwritten rule, if not an actual policy about minimizing medical treatment to lower costs.")  Specific pleading is required to keep these claims from developing into vicarious liability claims.  The required specifics are lacking in Plaintiff's Complaint.

### B. WEXFORD IS IMMUNE FROM PLAINTIFF'S NEGLIGENCE CLAIMS PURSUANT TO § 768.28, AND MOREOVER, PLAINTIFF HAS NOT PLEAD COMPLIANCE WITH THE SOVEREIGN IMMUNITY PRESUIT REQUIREMENTS UNDER § 768.28(6)(A).

In Count II "Negligence," Plaintiff alleges Wexford was negligent insofar as it "provided inadequate medical treatment to [Plaintiff]." (¶ 128)  Also that Wexford was negligent "with respect to transporting [Plaintiff] to Jackson Memorial Hospital both in the manner they transported him as well as the length of time it took. . . ." (¶ 129).  According to Florida Statutes §768.28 entities such as Wexford have certain sovereign immunity rights and limitations with respect to claims against them. Among the rights and limitations is § 768.28(9)(a), which establishes that no "officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of his employment or function, **unless such officer, employee, or agent acted in**

**bad faith or with malicious purpose or in a matter exhibiting wanton and willful disregard of human rights, safety, or property**. . . ." § 768.28(9)(a). (emphasis added).

There are absolutely no allegations that Wexford acted with the intent required to remove the shield of immunity. From the statute it is clear that Plaintiff must allege Wexford either acted outside the scope of its employment (in this case its contractual obligations) or with bad faith.    "Courts construing the bad-faith prong of section 768.28 use the actual malice standard, which means the conduct must be committed with 'ill will, hatred, spite, [or] an evil intent.' Conduct meeting the wanton and willful standard is defined as 'worse than gross negligence,' and 'more reprehensible and unacceptable than mere intentional conduct.'" Eiras v. Florida, 239 F. Supp. 3d, 1331, 1343  (M.D. Fla. 2017) (internal citations omitted).    Furthermore, the statue places an affirmative duty on Plaintiff to meet this pleading requirement. Medberry v. McCallister, 937 So. 2d 808, 814 (Fla. 1st DCA 2006).

Additionally, §768.28 (10)(a) states:

> Health care providers or vendors, or any of their employees or agents, **that have contractually agreed to act as agents of the Department of Corrections to provide health care services to inmates of the state correctional system <u>shall be considered agents of the State of Florida, Department of Corrections</u>, for the purposes of this section**, while acting within the scope of and pursuant to the guidelines established in said contract or by rule. The contract shall provide for the indemnification of the state by the agent for any liabilities incurred up to the limits set out in this chapter. (emphasis added).

This section has been interpreted as addressing the legislature's public policy concerns regarding the liability of healthcare providers such as Wexford. See Mingo v. ARA Health Services, Inc., 638 So. 2d 85, 86 (Fla. 2d DCA 1994) (stating that the "legislature found its necessary to create state agency status for such healthcare providers by specific

statutory enactment.").

Where, as here, the language of the statute is clear, unambiguous and conveys a clear and definite meaning, the statute should be given its plain and obvious meaning. See Randall v. Loftsgaarden, 478 U.S. 647, 656 (1986). The "cardinal cannon" of statutory interpretation is that "courts must presume that a legislature says in a statue what it means and means in a statute what it says there." Connecticut National Bank v. Germaine, 503 U.S. 249, 253 – 254 (1992); Prewitt Management Corp. v. Nikolits, 795 So.2d 1001, 1005 (Flat 4th DCA 2001); Jackson County Hospital Corp. v. Aldrich,  835 So. 2d 318, 329 (Fla. 1st DCA 2003). The court's function interpreting statues is to give effect to each word in the statute. See U.S. v. Ballinger, 395 F. 3d 1218, 1236 (11th Cir. 2005). Courts are obligated to adopt the construction of statutory provisions which harmonizes and reconciles them with other provisions of the same act. See In re International Admin. Serv., Inc., 408 F.3d 689, 708, n. 7 (11th Cir. 2005) (stating that "[i]t is a fundamental cannon of statutory construction that the words of a statute must be read in the context and with a view to their place in the overall statutory scheme….We must therefore interpret the statute as asymmetrical and coherent regulatory scheme… and fit, if possible, all parts into a harmonious whole") (citations and internal quotation marks omitted).

Based on the language of the controlling statutes, as well as the allegations in the Complaint, Plaintiff cannot maintain his state law negligence claims in Count II against Wexford. The statutory section specifically states that healthcare providers such as Wexford and their employees are entitled to sovereign immunity as state agents when providing services to inmates. Because of this protection, these negligence claims cannot be maintained

against Wexford. Importantly, as argued above, Count I although titled "Deliberate Indifference" is merely a negligence claim which by virtue of sovereign immunity, must also be dismissed.

Moreover, Plaintiff has not plead compliance with the presuit notice requirements under §768.28(6)(a) which states that

> An action may not be instituted on a claim against the state or one of its agencies or **subdivisions unless the claimant presents the claim in writing to the appropriate agency**, and also, except as to any claim against a municipality, county, or the Florida Space Authority, present such claim in writing to the Department of Financial Services, **within 3 years** after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing.… (emphasis added).

Furthermore, §768.28 (6) (b) states, "For purposes of this section, the requirements of notice to the agency and denial of the claim pursuant to paragraph (a) are conditions precedent to maintain a cause of action. . . ." "Pursuant to the statute, a plaintiff must satisfy the notice requirements prior to maintaining a lawsuit against a subdivision of the state, 'and **the complaint must contain an allegation that such notice was given**.'" Shaeffer v. School Board of Broward County, Fla. 69 F. Supp. 3d 1327, 1329 (S.D. Fla. 2014) (emphasis added) quoting Fletcher v. City of Miami 567 F. Supp 1389, 1393 (S.D. Fla. 2008). Nowhere in Plaintiff's Complaint does it allege compliance with the statutory presuit notice requirements under §768.28.

C.   **PLAINTIFF HAS FAILED TO COMPLY WITH THE PRESUIT REQUIREMENTS TO BRING A MEDICAL NEGLIGENCE CLAIM PURSUANT TO F.S. §766.104 – § 766.106.**

Plaintiff alleged that Wexford "and its employees. . . provided inadequate medical

treatment to [Plaintiff] that amounted to negligence if not a deliberate indifference to serious medical condition." (¶ 128).   Florida's Medical Malpractice Act, found in Chapter 766, Florida Statutes (2017) requires compliance with a complex pre-suit investigation procedure that both claimant and defendant must abide by before a medical negligence claim can be filed in court.  See §766.106; see also § 766.203.

Plaintiff's claim that Wexford was negligent which resulted in his injuries is a "claim for medical malpractice" under § 766.106(1)(a) which defines it as "a claim, arising out of the rendering of, or the failure to render, medical care or services."  See § 766.106(1)(a); see also J.B. v. Sacred Heart Hospital of Pensacola, 635 So.2d 945, 949 (Fla. 1994) (Supreme Court of Florida held that pre-suit screening requirement under Chapter 766 applies to claims which arise out of the rendering or failure to render medical care or services.); St. Anthony's Hospital, Inc. v. Lewis, 652 So.2d 386, 387 (Fla. 2nd DCA 1995) (finding that the "duty of the hospital to select and review health care personnel arises under the medical malpractice statute.").

Plaintiff has not complied with any of Chapter 766 presuit requirements within the two year statute of limitations to do so, requiring Counts I and II be dismissed with prejudice. See Berry v. Padden, M.D., 84 So. 3d 1145 (Fla. 4th DCA 2012) (citing long standing Florida law justifying dismissal with prejudice when Plaintiff fails to comply with mandatory presuit requirements).

**D. FURTHERMORE, THIS COURT SHOULD STRIKE PLAINTIFF'S PUNITIVE DAMAGES CLAIM AS THEY ARE NOT SUPPORTED BY FACT OR LAW.**

Plaintiff seeks punitive damages which are not supported by fact or law and should be stricken from the Complaint under Fed.R.Civ.P. 12(f) which permits the Court to strike "redundant, immaterial, impertinent, or scandalous matter[s]."

As to punitive damages, it is well settled that punitive damages are appropriate in § 1983 cases "where a defendant's conduct is motivated by evil intent or involves callous or reckless indifference to federally protected rights." H.C. by Hewett v. Jarrard, 786 F.2d 1080, 1089 (11th Cir. 1986) citing Smith v. Wade, 461 U.S. 30, 56 (1983). Yet, as argued above, Plaintiff has not alleged the requisite intent to establish deliberate indifference, let alone the heightened requirement of "conduct motivated by evil intent" to establish punitive damages.

## II.   Conclusion

For the reasons argued above, the claims against Wexford must be dismissed.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was E-filed with the Clerk of Court through the CM/ECF system on **May 23, 2018**, and is to be E-served by the Court Clerk to:   **EMIR SEHIC, Esq.**  Sehic Law, PLLC, 501 Main Street. Rt. 6A, P.O. Box 2071, Dennis, MA 02638, *Counsel for Plaintiff.*

> CHIMPOULIS, HUNTER & LYNN, P.A.
> Attorneys for Defs/WEXFORD HEALTH
> SOURCES, INC.,
> 150 South Pine Island Road - Suite 510
> Plantation, FL  33324
> Phone: (954) 463-0033 / FAX:  (954) 463-9562
>
>
> /s/ Alexander Dombrowsky
> BY:   ALEXANDER DOMBROWSKY, ESQ.
>        Florida Bar No.:  186260
>        Email – adombrowsky@chl-law.com
>        M. KATHERINE HUNTER, ESQUIRE
>        Florida Bar No.:  981877
>        Email – khunter@chl-law.com