**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

ALEX M. CAVE,

       Plaintiff,

       v.                                          DOCKET NO. 18-cv-21587-UU

JULIE L. JONES, et al.

       Defendants.

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S, JULIE L. JONES, MOTION TO DISMISS THE AMENDED COMPLAINT, TO STRIKE THE CLAIM FOR PUNITIVE DAMAGES, AND TO GRANT HER QUALIFIED IMMUNITY

The Plaintiff, Alex M. Cave (the "Plaintiff" or "Cave"), by and through his undersigned counsel, hereby opposes the Defendant's, Julie L. Jones (the "Defendant" or "Jones"), Motion to Dismiss the Amended Complaint, to Strike the Claim for Punitive Damages, and to Grant her Qualified Immunity (the "Motion") [DE 36] and submits the following Response in Opposition ("Response").

## I.    INTRODUCTION

On June 22, 2018, Cave filed his First Amended Complaint [DE 23] asserting two counts: (i) a civil rights claim pursuant to 42 U.S.C. §§ 1983, 1988 and the Eight Amendment of the United States Constitution, and (ii) a claim of negligence pursuant to Florida common law.   On July 11, 2018, Jones filed her motion to dismiss the First Amended Complaint. [DE 36].   In summary, Jones argues that: (i) Cave failed to allege sufficient facts to state any plausible claim for relief with respect to Jones in either her individual or official capacity; (ii) Cave failed to allege sufficient facts to state a claim for punitive damages; and that (iii) Jones is entitled to

qualified immunity.   has no jurisdiction pursuant to the 11th Amendment; and that (iii) Cave fails

to state a cause of action for deliberate indifference against Jones because she is not deemed a

person when sued in her official capacity.  See [DE 36] at 1.

Accepting Plaintiff's factual averments as true, and drawing from its own experience and

common sense, the Court should find Cave's claims legally sufficient for three reasons.  First,

Cave states valid claims of deliberate indifference and negligence against Jones in both her

individual and official capacity.  Cave's averments are significantly detailed and are not mere

"threadbare" recitals of elements.  The Eleventh Amendment does not bar a section 1983 claim

brought against a state official in her official capacity when seeking declaratory and injunctive

relief.  The relief sought in this case is prospective in nature and is sought to prevent other

inmates from suffering the same recurring harm endured by Cave due to Jones's money-saving

policy of denying necessary medical services, transportation, and pain relief.  Second, Cave's

punitive damages claims are supported by both fact and law. Punitive damages are properly

awarded for reckless indifference to an inmate's federally protected rights, such as the denial or

delay of medical treatment and pain relief due to a cost-saving policy.  Third, Jones is not

entitled to qualified immunity.  Jones's policy violated Cave's constitutionally protected right to

basic medical treatment, and this right was clearly established by precedent at the time Jones's

policy was in effect.

Jones was ultimately responsible for the physical safety and the provision of medical care

to prisoners at Everglades Corrections Institution ("Everglades CI").   Nevertheless, this

responsibility was abrogated at all levels by Jones, corrections officers at Everglades CI, the

medical contractor that was retained by Jones - Wexford Health Sources, Inc. ("Wexford") - and

Wexford's employees.  This responsibility was abrogated in favor of Jones's and Wexford's

cost-cutting policies or practices including denying and delaying medical treatment, emergency transportation, and basic pain relief to respectively save or to make as much money as possible. In support of his claim of deliberate indifference, Cave also asserts that Jones's cost-cutting policy or practice caused Everglades CI to be improperly manned, lacking in experienced officers, lacking security cameras, and lacking adequate safety measures to adequately insure his physical safety.  Jones's responsibility to properly equip and man this correctional institution was in her normal purview and her abject failure to do so, as alleged in the complaint, clearly establishes a causal connection between her actions as supervisor and the constitutional violations to Cave.  The complaint alleges a causal connection between (i) Jones's policy of "cost-cutting," (ii) the inadequate safety measures and Cave's objectively serious need of treatment, and (iii) the resulting damages Cave ultimately suffered.  Furthermore, Cave is entitled to present both federal and state counts in the alternative. The Defendant's motion to dismiss should therefore be denied.

## II.    FACTUAL BACKGROUND

At the time of the incidents at issue, Cave was an inmate at Everglades CI in Miami, Florida. (¶ 6).  Jones is the Secretary of the FDOC and is responsible for the overall operation of the FDOC and its prison facilities. (¶ 8).  Jones is also referred to in the complaint as the "FDOC." Id.  As Secretary of the FDOC, Jones has a non-delegable duty to provide constitutionally adequate security and medical care to all persons in her custody. Id.   Wexford is a for-profit corporation with a principal place of business in Pennsylvania. (¶ 9).  Since March 24, 2013, Wexford has contracted with the FDOC to provide medical and mental health care services to all persons confined in Everglades CI. Id.  At the time of this incident, all medical professionals (including doctors and nurses) at Everglades CI were employed by Wexford.  (¶

10).  Wexford's employees included, among others, Dr. Dora Gaxiola ("Gaxiola"), LPN Ricky

Rowe ("Rowe"), Dr. Oscar Ortega, and RN Marie Louissant ("Louissant"). (¶¶ 11-14).  Jones

and Wexford were responsible for the care of inmates at Everglades CI. (¶ 24).  Jones, Wexford

and their agents acted under color of state law. (¶ 25).

Inmates at Everglades CI are completely dependent upon Jones and the other named

Defendants to provide them with their physical security and medical care.  (¶¶ 27, 29).  Prisoners

are not free to seek their own care, even if they pay for it. (¶ 30).  If a prisoner has a medical

issue, he can access sick call, where he usually sees a nurse. (¶ 31). The nurse can refer the

prisoner for an appointment with the institution physician. Id.  If the physician believes a consult

with a specialist is needed, the physician can request a consultation. Id.  That request is

forwarded to the Utilization Management ("UM") in Tallahassee, which is controlled by Jones.

Id.  UM can either approve or deny the request.  Id.  In an emergency - or life-threatening -

situations, inmates are supposed to be allowed to receive surgery. (¶ 32).

In the afternoon of April 22, 2014, multiple inmates assaulted and knocked Cave

unconscious while he was using the bathroom of the recreation yard at Everglades CI. (¶ 35).

While Cave was unconscious, these inmates shoved a long, metal rod into his rectum. (¶¶ 35,

78).  At the time of this incident, Everglades CI was not properly equipped with adequate

security cameras in the recreational yards in which Cave was attacked. (¶ 38).  The bathroom

area was not being monitored by security cameras or by corrections officers at that time (¶ 39).

Everglades CI also lacked adequately trained and experienced corrections officers at the time

that Cave was attacked. (¶¶ 41-42).  The median years of corrections officers' experience at

Everglades CI was less than one year at the time of this incident. (¶ 42).  Jones was responsible

for the staffing and training of the corrections officers at the FDOC. (¶ 112).

After Cave became conscious, he dressed himself, was in a lot of pain, and went back to his cell. *(*¶¶ 36, 37 and 43).  As soon as he sat down on his bed, Cave felt intense pain coming from his rectum and stomach areas.  (¶ 44).  Cave walked to a corrections officer manning the supervisory "bubble" of the cellblock; however, despite the fact that Cave declared a medical emergency, the corrections officer refused his request. (¶ 45).  Cave immediately tried to get to the medical unit, and he arrived there as soon as he could, at approximately 5:30 p.m. (¶¶ 45, 47).

When Cave reached the medical unit, he was seen by the attending nurse, Rowe. (¶ 48).  Cave had multiple marks, scratches, abrasions, and lumps on him. (¶ 59).  Nevertheless, when Cave explained the assault and his pain, Rowe immediately and without assessment stated, "I don't believe you." (¶¶ 49, 51).  As Cave refused to leave the medical unit, Rowe left the room to get multiple corrections officers. (¶ 50).  Instead of performing his own assessment, Rowe had corrections officers evaluate Cave. (¶ 52).  At some point, Rowe noted that Cave's medical condition was "life-threatening." (¶ 63).  Instead of calling for an ambulance, however, Rowe notified Gaxiola about the situation approximately two hours after Cave first reported to the medical unit. (¶ 61).

No doctor was present at Everglades CI at this time. (¶ 55).  Gaxiola was on-call but she did not come to Everglades CI to evaluate Cave. (¶ 56-57).  Cave kept telling Rowe that he was in intense pain and needed to be brought to the emergency room. (¶ 65).  Nevertheless, Cave was kept standing for hours at the medical unit (because he could not sit with a metal rod left in his abdomen) while Wexford and the FDOC tried to determine who would pay for the emergency medical services and ambulance.  (¶¶ 64, 67).  Even one local law enforcement officer at the

scene stated "this is wrong," regarding the length of time Cave was forced to wait. (¶ 70).  The FDOC never authorized an ambulance to take Cave to Jackson Memorial Hospital. (¶¶ 68, 71).

Jones and Wexford have a policy or practice of minimizing medical treatment to lower costs, even in life-threatening conditions. (¶ 118).  Jones did not ensure that a doctor was present at Everglades CI, nor did a doctor ever come to Everglades CI to assess Cave on April 22, 2014. (¶¶ 56-57).  Jones's cost-cutting policy or practice includes refusing to call an ambulance when inmates like Cave present with a life-threatening condition. (¶¶ 68, 120).  Jones's policy or practice, as implemented by Wexford's and FDOC's employees, caused Cave to wait from 5:30 p.m. to 11:30 p.m. on April 22, 2014 before being allowed to leave Everglades CI for the emergency room at Jackson Memorial Hospital. (¶ 69).

Instead of being taken by ambulance, Cave was ordered to enter a FDOC van by two corrections officers.  (¶ 72).  Cave was ordered to lay horizontal on the ground of the van, without a seat belt or any other stabilizing system, for the entire ride. Id.  JMH Hospital is only 21.2 miles from Everglades CI. (¶ 75).  Nevertheless, these two corrections officers - John Doe #1 and John Doe #2 - took two hours to bring Cave to the hospital. (¶ 73).  Cave did not arrive at JMH until approximately 1:30 a.m. on April 23, 2014. (¶ 77).  At JMH, the response was immediate to Cave's symptoms. (¶ 78).  Cave was immediately rushed to the emergency room. Id. He was immediately prepped for surgery, and he received a colostomy. (¶ 79).  After the surgery, the treating doctor told Cave, "[i]f you were brought here earlier, the colostomy could have been prevented." (¶ 80).  Cave remained at the hospital for multiple days following the surgery. (¶ 81).

Even after Cave returned to Everglades CI, FDOC's and Wexford's employees continued to deny basic services and medication to Cave resulting from his surgery. (¶¶ 86-89, 91-93, 98-

104).  On May 9, 2014, Cave bled excessively into his colostomy bag and declared a medical

emergency.  ¶ 84).  Cave's situation was relayed to the on-call medical provider, Louissant;

however, Louissant did not come in to Everglades CI to see Cave. (¶ 87).  Instead, Louissant

denied any pain medication and simply ordered Cave back to confinement without any

examination. (¶ 88).  On May 10, 2014, Cave again excessively bled into his colostomy bag and

a corrections officer declared a medical emergency. (¶ 90).  After Cave was brought to the

medical unit on a stretcher, he had to wait for approximately three hours for Gaxiola, the on-call

physician, to arrive. (¶ 91).  Gaxiola again did not evaluate, let alone speak with, Cave. (¶ 92).

Instead, Cave was returned to his cell in severe pain. (¶ 93).

On May 12, 2014, Cave had a third incident of excessive bleeding into this colostomy

bag that was declared a medical emergency. (¶¶ 94, 98).  This time, multiple corrections officers

including CPT Gregory Hines ("Hines") arrived to Cave's cell.  (¶ 94).  In the presence of these

multiple officers, Hines stated, "[n]ext time [Cave] has a medical emergency, leave him be,

maybe he'll bleed to death." (¶ 95).  At least five corrections officers who were present at

Cave's cell refused to take any action. (¶ 96).  Instead, they just stood in front of his cell. (¶ 98).

Cave passed out due to his excessive bleeding. (¶ 97).  Cave was ultimately brought to the

medical unit on a stretcher. (¶ 99).  Despite being in severe pain, Cave was denied any pain

medication. (¶ 102).  Cave requested to be brought to an outside hospital to determine why he

was bleeding so excessively; but, Ortega ignored his request. (¶ 101).  Ortega instead ordered

that Cave be shackled to his bed in the infirmary despite the advice of a corrections officer. (¶

103).  Cave was the only inmate handcuffed to his bed in general population. Id.  On May 13,

2014, while Cave was shackled to his bed, one corrections officer threatened Cave with physical

assault. (¶ 105).

Subsequent to Cave's stabbing, administration officials and corrections officers at the FDOC and Everglades CI did not investigate the matter adequately or properly. (¶¶ 109, 110). Despite filing grievances in this matter, FDOC and the medical staff did not properly investigate the responses to his medical emergency. (¶ 114). Cave was denied medical treatment and pain relief due to the fact that Jones and Wexford wanted to save as much money as possible on his case. (¶ 115). Cave suffered from pain and emotional distress resulting from the assault and corresponding medical responses by FDOC, Wexford and their agents. (¶ 82). The actions of the Defendants and their agents were performed under color of state law and constitute state action. (¶ 25). Jones is ultimately responsible for the staffing and training of the corrections officers at Everglades CI. (¶ 112). Jones is ultimately responsible for the actions and omissions of corrections officers with respect to the failure to investigate and address prisoners' grievances. (¶ 113). The Defendants acted outside the scope of their duties and in an arbitrary manner. (¶ 26). Cave avers that all conditions precedent necessary to the filing of this action have been satisfied or waived. (¶ 34). Finally, Cave seeks both declaratory and injunctive relief against Jones. (¶ 124(d), (e)). Cave requests that the Court issue a permanent injunction requiring Jones and any medical provider contracted by the FDOC to immediately provide transportation using ambulances and pain relief for all FDOC prisoners who have or have been deemed to have a life-threatening condition. (¶ 124(e)).

## III.   LEGAL STANDARD

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 556 U.S. at 663.

The court is permitted to draw on its experience and common sense when determining whether a complaint states a plausible claim. Id. at 664.  "[D]etailed factual allegations" are not required. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The court considers the complaint in its entirety, including matters of which a court may take judicial notice. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. Ancata v. Prison Health Servs., Inc., 769 F. 2d 700, 703 (11th Cir. 1985).  A "heightened pleading standard" does not apply to civil cases alleging liability under 42 U.S.C. § 1983.  Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993).  In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Omar ex. rel. Cannon v. Lindsey, 334 F. 3d 1246, 1247 (11th Cir. 2003).

## IV.    ARGUMENT

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights.  Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.  A claim under § 1983 therefore requires: (i) a violation of a right secured by the Constitution or laws of the United States, and (ii) that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).  The limitations and scrutiny of the Eighth Amendment

are applicable to the States through the Fourteenth Amendment. <u>Rhodes v. Chapman</u>, 452 U.S. 337, 345 (1981). It is settled law that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994).

The Eighth Amendment embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency against which penal measures are evaluated. <u>Estelle v. Gamble</u>, 429 U.S. 97, 102 (1976). Punishments which involve the unnecessary and wanton infliction of pain are repugnant to the Eighth Amendment. <u>Id.</u> at 103. The government is obligated to provide medical care for those whom it is punishing by incarceration. <u>Id.</u> Even less serious cases, where the denial of medical care may result in pain and suffering, fail to serve any penological purpose. <u>Id.</u> The deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain." <u>Id.</u> at 104. This is true whether the indifference is manifested by prison doctors in their response to prisoner's needs or by prison guards intentionally delaying access to medical care or intentionally interfering with prescribed treatment. <u>Estelle</u>, 429 U.S. at 105. For damages and injunctive relief, the failure to give advance notice is not dispositive. <u>Farmer</u>, 511 U.S. at 847. A plaintiff may establish a defendant's awareness by reliance on any relevant evidence. <u>Id.</u>

### A. Cave Sufficiently States A Claim Of Deliberate Indifference.

1. <u>Jones is Subject to Section 1983 Liability as a Supervisor of Co-Defendants Employed By or Contracted With the FDOC.</u>

Jones is subject to section 1983 liability as a supervisor under theories of respondeat superior or vicarious liability for the actions of its subordinates. It is well settled that if a plaintiff sues a supervisor, there must be proof that the alleged injuries resulted from an official

custom, policy, or practice. Monell v. Department of Social Services, 436 U.S. 658, 694 (1978). The plaintiff bears the burden of establishing a causal link between a government policy or custom and the injury which is alleged. Byrd v. Clark, 783 F.3d 1002, 1008 (11th Cir. 1986). The Eleventh Circuit has held that supervisors who are not alleged to have personally participated in the constitutional violation which gave rise to the section 1983 action may nonetheless be liable for a constitutional deprivation "when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Cottone v. Jenne, 326 F.3d 1352, 1360-61 (11th Cir. 2003). Such a causal connection may be established: (i) by a history of widespread abuse which puts the supervisor on notice of the need to correct the deprivation and he fails to do so, (ii) when a supervisor's "custom or policy . . . result[s] in deliberate indifference to constitutional rights," or (iii) "when [the] facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." See Cottone, 326 F.3d at 1360-61 (citations and internal quotation marks omitted).

The Eleventh Circuit has rejected the idea that "financial considerations must be considered in determining reasonableness of inmates' medical care to the extent that such rationale could ever be used by so-called 'poor' states to deny a prisoner the minimally adequate care to which he or she is entitled." Harris v. Thigpen, 941 F.2d 1495, 1509 (11th Cir. 1991). In appropriate circumstances, deliberate indifference claims based on allegations of institutional "cost-cutting" are cognizable. See e.g., Walker v. Powell, 2007 WL 4303766 (N.D. Fla. Dec. 10, 2007) (unrebuttable allegations that Plaintiff went from 180 to 140 lbs because prison meals were nutritionally inadequate due to cost-saving measures were sufficient to create a triable issue of fact).

Here, the complaint states that Jones intentionally implemented and condoned a policy or practice of cost-cutting measures that denied or delayed Cave's medical treatment in life-threatening situations.  Denying and delaying medical treatment is tantamount to "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104; Washington v. Dugger, 860 F.2d 1018, 1021 (11th Cir. 1988).  The clearest example of Jones knowing its cost-cutting measures would hurt inmates in life-threatening situations is the refusal to provide or call ambulances for inmates including Cave.  As a prisoner, Cave could not drive himself to the hospital.  Everglades CI had to decide *whether* to let Cave go to the hospital, *when* he should go to the hospital, and *how* or *in what manner* Cave was going to be brought there.  Ambulances are specifically designed to deal with the inherent challenges of transporting persons with injuries, especially life-threatening injuries, safely to fully-equipped medical facilities and providers.  While not alleged, it can be inferred, that Jones was aware that ambulances expedite travel and shorten the delay to medical providers through the use of flashing warning lights and sirens.  Ambulances are usually staffed by trained EMTs and are designed to provide immediate medical treatment enroute to a hospital.  Moreover, drivers of ambulances are usually knowledgeable as to the location of the hospital to which they are traveling.    It can be inferred that Jones knows the difference between ambulances and FDOC vans.  Therefore, by refusing to provide ambulances in life-threatening situations, Jones had to know she was deliberating denying or delaying inmates the treatment they needed.

As supervisor and the person ultimately responsible for the actions and omissions of corrections officers, Jones is liable on a supervisory capacity for the other named Defendants' actions.  For example, corrections officers were asked by Rowe to evaluate Cave, which they did by running metal detectors over his body.  It took two corrections officers over two hours to take

Cave to a hospital that was approximately 21 miles away.  Meanwhile, Cave was lying down and moving around, unsecured, on the bottom of the van as he could not sit.  Jones had to know her policy of cost-cutting was subjecting inmates, specifically Cave, to extreme risk of substantial harm in their transportation.

The implementation and effects of an austere cost-cutting policy are also evidenced by the absence or grossly inadequate treatment provided to Cave by both the medical staff and the various corrections officers at Everglades CI as referenced in the complaint.  Jones contracted with Wexford for the provision of medical care; however, pushed for cost-cutting measures that caused the systematic delay of treatment to inmates (including Cave).  At the time of these events, Cave was suffering from a life-threatening condition.  On April 22, 2014, Rowe immediately denied a valid claim even when Cave presented with lumps, abrasions, and other marks.  Wexford often did not have key medical providers at the hospital.  It took Cave over six hours just to leave Everglades CI when he had a metal rod in his abdomen.  Even when these key medical providers were notified of Cave's life-threatening situations, they either did not come to Everglades CI or they did not assess Cave.  With the exception of one, all corrections officers failed to respond to Cave's requests of a medical emergency.  Hines said, "leave him be, maybe he'll bleed to death," when responding to another requested medical emergency.   Finally, the lack of a response to Cave's grievances shows that FDOC condoned its employees' and contractor's actions.  Cave's factual assertions, and their permissible inferences, sufficiently plead a plausible claim for deliberate indifference.  Therefore, Defendant's motion should be denied.

Separately, Jones also was responsible for the equipping corrections facility with adequate security measures and properly trained and experienced corrections officers.  Security

cameras in the prison yard are reasonable measures to guarantee the safety of inmates. See §
944.151, Fla. Stat. (2017)("The evaluation of the physical plan policies must include . . . the
deployment of video monitoring systems and other appropriate monitoring technologies in such
[blind] spots or areas); see also Kocsis v. County of Sedgwick, 2016 WL 1255593 at *12 (D.
Kan. March 29, 2016). The very phrase "security camera" evidences a purpose of protecting
both guards and the inmates at a prison through monitored observation. In Kocsis, a plaintiff
asserted a § 1983 complaint for many reasons including inadequate surveillance in his place of
incarceration. Kocsis, 2016 WL 1255593 at *12. It was only after the parties had completed
discovery that the Defendants moved for summary judgment, showing that the jail was
monitored by 200 to 250 cameras, which deputies monitored. Id.

Here, Cave asserts that Jones failed to establish a functioning surveillance system for the
recreational yards in which Cave was attacked. See (¶ 38). Cave asserts that had Jones properly
equipped security cameras or had the bathroom area monitored by either cameras or corrections
officers, Cave would not have suffered the serious assault and damage inflicted on him. See (¶¶
38-40). As this matter is just in the beginning stages of litigation, all of the factual assertions
made must be taken as true. Not having to worry about cameras, violent inmates were
uninhibited. Moreover, had functioning security cameras been working in the yard, such video
evidence would have greatly helped bring Cave's assailants to justice. Had Jones had a
functioning security system in the recreation yards, camera surveillance would have enabled the
guards to isolate the violent inmates from the rest of the community, for the safety of the entire
community. The need for and use of security cameras is one of the most basic elements of
prison safety measures and the lack thereof is just another example among others as to Jones's
cost-cutting policy in effect. Cave also asserted that the corrections officers at Everglades CI

were inadequately trained and that the median years of experience at the facility was less than one year at the time of the assault.  Using the above facts with respect to Count II, Cave also laid out a claim for gross or wanton negligence on the part of the Defendant.

2.       <u>A Six-Hour Denial or Delay of Medical Treatment is Sufficient to Establish a Claim of Deliberate Indifference to Serious Medical Need.</u>

A six-hour denial or delay of medical treatment is sufficient to establish a claim of deliberate indifference to serious medical need. <u>Brown v. Hughes</u>, 894 F.2d 1533, 1538 (11th Cir. 1990) (approximate six-hour delay in medical treatment for "a serious and painful broken foot is sufficient to state a constitutional claim").  The Eleventh Circuit has provided guidance concerning the distinction between "deliberate indifference" and "mere negligence."  For instance, "an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." <u>Lancaster v. Monroe County</u>, 116 F.3d 1419, 1425 (11th Cir. 1997).  Alternatively, "[e]ven where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." <u>McElligot v. Foley</u>, 182 F.3d 1248, 1255 (11th Cir. 1999).  A serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Hill v. Dekalb Reg'l Youth Det. Ctr.</u>, 40 F.3d 1176, 1187 (11th Cir. 1994).

Here, Cave presented to the medical unit at Everglades CI with a serious medical need.  There is no question that a metal object inserted into one's rectum and residing in one's abdomen presents a serious medical need.  It was so obvious to Cave that, as soon as he recognized the

pain, he immediately made his way to the medical unit.  The serious medical need was so obvious that local law enforcement described the delay as being "wrong."  Rowe noted that Cave's situation was "life-threatening."  Rowe notified Gaxiola that the situation was "life-threatening." Moreover, in their respective analysis supporting their motions to dismiss, neither Jones, Wexford, Ortega, or Rowe dispute the fact that Cave presented with a serious medical need.

Cave inexplicably waited approximately six hours with this serious medical condition from when he arrived at the medical unit to when he left Everglades CI.  He received no medical treatment during this delay and was denied an ambulance as result of the cost-cutting policy or practice of Jones.  Even the swift action by the medical team at Jackson Memorial Hospital evidences the life-threatening nature of the situation.  Finally, Cave was told by a doctor at Jackson Memorial Hospital that had he been brought to the emergency room sooner, his damages and injury would not have been as bad and his colostomy could have been avoided.  Sadly, the denial or delay of treatment was not an isolated incident as evidenced by what happened on May 10th, 12th, and 13th.  Cave's allegations are more than sufficient to establish a claim of deliberate indifference to serious medical need.  Count I was adequately plead; therefore, the Defendant's motion to dismiss should be denied with respect to Count I.

3.    Sued in her Individual Capacity (separate from her Official Capacity), Jones is Subject to Suit for Monetary Damages.

The Plaintiff is suing Jones in both her individual and official capacity.  A suit against a state official in her official capacity is a suit against the official's office. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).  When Jones is sued in her official capacity, such a claim is deemed a suit against the State of Florida. See Kentucky v. Graham, 473 U.S. 159, 166-67 (1985).  In her official capacity, Jones is not subject to suit for monetary damages under

section 1983. See Besselaar v. Siegelman, 2001 U.S. Dist. LEXIS 8760, at *21 (S.D. Ala. May 2, 2001).  However, when sued in her individual capacity, Jones is a "person" who may be sued for a constitutional deprivation under section 1983. 42 U.S.C. § 1983.

      **B.**      **Jones Is Not Immune As She Acted In A Manner Exhibiting Wanton And Willful Disregard of Plaintiff's Human Rights And Safety.**

Jones is not immune to Plaintiff's negligence claims as she acted in a manner exhibiting wanton and willful disregard of Cave's human rights and safety.  Pursuant to Florida Statutes § 768.28(9)(a):

> **No officer, employee, or agent of the state** or of any of its subdivisions **shall be held personally liable in tort** or named as a party defendant in any action for any injury or damage suffered **as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety**, or property. However, such officer, employee, or agent shall be considered an adverse witness in a tort action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function. The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

(emphasis added).  Additionally, section 768.28(10)(a) states:

> **Health care providers** or vendors, or any of their employees or agents, **that have contractually agreed to act as agents of the Department of Corrections to provide health care services to inmates** of the state correctional system **shall be considered agents** of the State of Florida, Department of Corrections, for the purposes of this section, **while acting within the scope of and pursuant to guidelines established in said contract or by rule.** The contracts shall provide for the indemnification of the state by the agent for any liabilities incurred up to the limits set out in this chapter.

(emphasis added).  Here, the only guideline or duty alleged was Jones's requirement to provide adequate safety and medical services to all persons confined in Everglades CI.  Jones has failed

to argue that she or FDOC's employees acted properly within the context of clearly established constitutional rights to inmate's basic medical care and safety.  Moreover, she cannot.  Discovery has not yet begun in this matter, and Jones cannot assert in her initial responsive pleading that she acted within guidelines or procedures she fails to mention or of which the Court is unaware.

Cave has alleged sufficient facts showing that Jones completely abrogated her non-delegable duties to provide medical services.   This case is about the absence of judgment and the lack of any form of treatment.  Plaintiff's claims are not that Jones and FDOC's employees made a medical error, but that, for reasons unrelated to medical judgment or performance the defendants consciously chose not to provide the needed care. See Kellar v. Fla. Dep't of Corr., 4:14-cv-84-RH-GRJ, 2015 U.S. Dist. LEXIS 163636, *29 (N.D. Fl. Oct. 1, 2015).  The key inquiry is whether the action arises out of any medical diagnosis, treatment, or care and if there is any doubt as to the applicability of such a statute, the question is generally resolved in favor of the claimant. J.B. v. Sacred Heart Hosp., 635 So. 2d 945, 946 (Fla. 1994) (finding that the negligent use of non-patient brother as a transporter for the patient not medical treatment).  Here, medical treatment never began at the hands of Jones, Wexford or their employees on April 22, 2014.  Jones did not meet the simplest obligations to providing medical treatment (i.e. having medical providers actually go to work and meet with inmates) due to its cost-cutting policy or practice.  Cave suffered compensable harm as a result.  The factual allegations and the reasonable inferences drawn therefrom evidence wanton and willful disregard of Cave's human rights and safety.

Jones condoned Everglades CI's employees conduct as evidenced by the failure to investigate or answer Cave's grievances.  The denial and delay of medical treatment was not an isolated incident and in the gentlest of ways is accurately described as "inadequate medical

treatment."  Moreover, all factual assertions were incorporated into each count, putting Jones on notice as to the nature of the claims.  Jones is therefore not immunized or entitled to hide liability behind sections 768.28 and 766.106, or their notice provisions.  For all the aforementioned reasons, the Court should deny Wexford's motion to dismiss with respect to both counts.

### C.    Cave Asserted That All Conditions Precedent Had Been Satisfied Or Waived.

Cave asserted that all conditions precedent necessary to the filing of the action had been satisfied or waived. (¶ 34.)   Cave asserted that the warden, corrections officers, and medical staff at Everglades CI did not answer his grievances. (¶ 110).  As such, the Court must accept as true that Cave has filed multiple grievance, that his multiple grievances went unanswered, and that he has adequately exhausted his administrative remedies as required by law.  The Defendant bears the burden of proving that the Plaintiff has failed to exhaust his available administrative remedies. Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008).  Discovery has just begun in this matter, and the Defendant has failed to make any factual assertions to the contrary. See Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008) ("First, the court looks to the factual allegations in the defendant's motion to dismiss….").  The Defendant assumes that Everglades CI provides inmates with a proper grievance procedure simply because state law requires it. Nowhere does the Defendant make any properly supported factual assertion that Cave failed to exhaust his remedies.  Therefore, the Defendant's motion should be denied.

Moreover, the issue of whether notice under § 768.28(6)(a) was timely given should be raised by answer or judgment on the pleadings, not a motion to dismiss. Cabral v. City of Miami Beach, 76 So. 3d 324, 326 (Fla. 3d DCA 2011).  Rule 1.120(c) of the Fla. R. Civ. P. further states that "[i]n pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred."  After the

plaintiff alleges performance of conditions precedent to a lawsuit, the burden then shifts to the

defendant to deny with specificity and particularity that the required notices were given, and to

present this issue to the trial court in the context of a summary judgment motion or motion for

judgment on the pleadings. Cabral, 76 So. 3d at 327.  Jones has failed to meet her burden,

procedurally or factually.

###### D.    Cave Is Entitled To Punitive Damages.

Cave is entitled to punitive damages in this matter as punitive damages could be awarded

for reckless indifference to an inmate's federal protected rights. See Smith v. Wade, 461 U.S. 30,

51 (1983).  Punitive damages may be awarded *not only* for "actual malicious intent," but also for

"recklessness" See id. at 49 ("While, *arguendo*, an intent standard may be easier to understand

and apply to particular situations than a recklessness standard, we are not persuaded that a

recklessness standard is too vague to be fair or useful"). "Outrageous," "callous," and

"repugnant," are the proper adjectives used to describe the implementation of Jones's policy or

practice in this matter.  Aside from precedent, the Court could also apply the golden rule to the

facts to assess whether Cave's allegations have risen to a level justifying punitive damages.  Had

any nonincarcerated person found themselves in a situation where (i) they could not sit down, (ii)

had abrasions and lumps on their body, and (iii) had intense pain coming from their rectum and

abdomen areas, said person's response would be to obtain immediate medical treatment.  No

rational person would voluntarily wait over six hours before calling emergency responders.  No

rational person would choose a van over an ambulance.  No rational person would choose a

colostomy bag if they did not need one, or refuse to take pain medication if they were in intense

pain and suffering.  The fact that Cave was an inmate does not allow Jones to subject him to

these conditions simply to lower operating costs.  As argued above, Cave has pled sufficient

factual allegations to establish deliberate and/or reckless indifference to justify a demand for punitive damages.  Therefore, the Court should deny the Defendant's motion to strike pursuant to Fed. R. Civ. P. 12(f).

      **E.    Jones Is Not Entitled To Qualified Immunity.**

      Jones is not entitled to qualified immunity.  Qualified immunity protects "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009).  Qualified immunity, however, "does not offer protection 'if an official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." Holmes v. Kucynda, 321 F.3d 1069, 1077 (11th Cir. 2003).  When it has been determined that an official was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to establish that: (1) the official's alleged conduct violated a constitutionally protected right, and (2) that the right was clearly established at the time of the misconduct. Pearson, 555 U.S. at 232.  The touchstone of the "clearly established" inquiry is whether the official had "fair warning" and notice that his conduct violated the constitutional right in question. Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011).  The Court looks to binding precedent set forth in the decisions of the Supreme Court, the Eleventh Circuit, or the highest court of the state to decide whether a right is clearly established. Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016).  Conduct deliberately indifferent to serious medical needs has included: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is cursory as to amount to no treatment at all. Id.  It also includes a defendant

who unreasonably fails to respond or refuses to treat an inmate's need for medical care or one who delays necessary treatment without explanation or for non-medical reasons. Id.

Here, Cave has shown that Jones instituted a cost-cutting policy that denied him necessary medical treatment in an emergency situation. Cutting the use of pain medication and the use of ambulances, the only logical conclusion would be that an inmate would be placed in unnecessary pain and serious risk of harm in transportation to emergency providers. The facts presented in the complaint sufficiently show that Jones had subjective knowledge of a risk of serious harm, that she disregarded that risk, and that this policy amounted to more than mere negligence. Therefore, the Court should deny the Defendant's motion to dismiss.

V.    **CONCLUSION**

For the foregoing reasons, the Plaintiff requests that the Defendant's motion to dismiss be denied with respect to all counts.

Date: August 3, 2018                           Respectfully Submitted,
                                               ALEX M. CAVE
                                               By his attorney,

                                               /s/ Emir Sehic
                                               Emir Sehic, Esq.
                                               FL Bar #: 0108914
                                               BBO# 687938
                                               SEHIC LAW, PLLC
                                               P.O. Box 2071
                                               Dennis, MA 02638
                                               Tel: (774) 722-5517
                                               Fax: (774) 221-6001
                                               *esehic@sehiclaw.com*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document was filed with the Clerk of Court through the CM/ECF system this August 3, 2018.  I also certify that the foregoing document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) or in some other authorized manner for those counsel or parties who are not authorized to received electronic Notice of Electronic Filing.

/s/ Emir Sehic
FL Bar #: 0108914