UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

ALEX M. CAVE,

    Plaintiff,

v.

JULIE L. JONES, et al.

    Defendants.

DOCKET NO. 18-cv-21587-UU

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S, WEXFORD HEALTH SOURCES, INC., MOTION TO DISMISS SECOND AMENDED COMPLAINT**

    The Plaintiff, Alex M. Cave (the "Plaintiff" or "Cave"), by and through his undersigned counsel, hereby opposes the Defendant's, Wexford Health Sources, Inc. (the "Defendant" or "Wexford"), Motion to Dismiss Second Amended Complaint (the "Motion") [DE 78] and submits the following Response in Opposition ("Response").

**I.    INTRODUCTION**

    On September 10, 2018, Cave filed his Second Amended Complaint [DE 72] asserting two counts: (i) a civil rights claim pursuant to 42 U.S.C. §§ 1983, 1988 and the Eighth Amendment of the United States Constitution, and (ii) a claim of negligence pursuant to Florida common law. On September 20, 2018, Wexford filed its Motion pursuant to Fed. R. Civ. P. 12(b)(6) and 12(f). [DE 78] at 1. Wexford alleges that: (i) Cave failed to state a claim of deliberate indifference; (ii) Wexford is immune from negligence claims pursuant to Florida law; (iii) Cave has failed to comply with pre-suit requirements pursuant to Florida law; (iv) Cave failed to exhaust his administrative remedies prior to filing suit; and (v) Cave's punitive damages claims are not supported by fact or law. *See* [DE 78] at 2-3.

1

Accepting Cave's factual averments as true and drawing from its own experience and common sense, the Court should find the claims legally sufficient for four reasons.  <u>First</u>, Cave states a claim of deliberate indifference.  <u>Second</u>, Wexford is a corporation that is not, and should not be, immune from negligence claims under Florida law as it exhibited wanton and willful disregard of Plaintiff's human rights and safety for purely economic reasons.  <u>Third</u>, Cave asserted that he filed grievances and that all conditions precedent had been met or waived.  <u>Fourth</u>, Cave's punitive damages claims are supported by both fact and law.

Wexford was responsible for providing medical care to prisoners at Everglades Corrections Institution ("Everglades CI").  Nevertheless, this responsibility was abrogated at all levels by Wexford's employees in favor of Wexford's policy or practice of refusing medical treatment to save and to thereby make as much money as possible.  In support of his claim of deliberate indifference, Cave alleged that Wexford's employees immediately denied Cave's supported claims of injury, did not provide medical assessments, forced delay, refused to call or provide an ambulance, and failed to act in face of obvious, life-threatening harm.  Wexford's policy or practice objectively and subjectively posed a substantial risk of serious harm to Cave.  The complaint states a causal connection between the substantial risk of harm alleged and the damages Cave suffered.  Cave avers that all conditions precedent necessary to the filing of the action have been satisfied.  Furthermore, Cave is entitled to present both federal and state counts in the alternative. The Defendant's motion to dismiss should therefore be denied.

## II.     FACTUAL BACKGROUND

At the time of the incidents at issue, Cave was an inmate at the Everglades CI in Miami, Florida.  (¶ 6).  Julie L. Jones ("Jones") is the Secretary of the Florida Department of Corrections ("FDOC") and is responsible for the overall operation of the FDOC and its prison facilities. (¶ 8).

As Secretary of the FDOC, Jones has a non-delegable duty to provide constitutionally adequate security and medical care to all persons in her custody. Id.  Wexford is a for-profit corporation with a principal place of business in Pennsylvania. (¶ 9).  Since March 24, 2013, Wexford has contracted with the FDOC to provide medical and mental health care services to all persons confined in Everglades CI, to include Cave. Id.  At the time of this incident, all medical professionals (including doctors and nurses) at Everglades CI were employed by Wexford. (¶ 10).  Wexford's employees included, among others, Dr. Dora Gaxiola ("Gaxiola"), LPN Ricky Rowe ("Rowe"), Dr. Oscar Ortega, and RN Marie Louissant ("Louissant"). (¶¶ 11-14).  Wexford is responsible for the care of inmates at Everglades CI. ( ¶ 24).  Wexford and its agents acted under color of state law. (¶ 25).

Inmates at Everglades CI are completely dependent upon Wexford and the other named Defendants to provide them with their physical security and medical care. (¶¶ 27, 29).  Prisoners are not free to seek their own care, even if they pay for it. (¶ 30).  If a prisoner has a medical issue, he can access sick call, where he usually sees a nurse. (¶ 31). The nurse can refer the prisoner for an appointment with the institution physician. (¶ 31).   If the physician believes a consult with a specialist is needed, the physician can request a consultation. Id.  That request is forwarded to the Utilization Management ("UM") in Tallahassee, which is controlled by Defendants to include Wexford. Id.  UM can either approve or deny the request.  Id.  In an emergency - or life-threatening - situations, inmates are allowed to receive surgery. (¶ 32).

In the afternoon of April 22, 2014, multiple inmates assaulted and knocked Cave unconscious while he was using the bathroom of the recreation yard at Everglades CI. (¶ 35).  While Cave was unconscious, these inmates shoved a long, metal rod into his rectum. (¶¶ 35, 78).  After Cave became conscious, he dressed himself, was in a lot of pain, and went back to his

cell. (¶¶ 36, 37 and 43.) As soon as he sat down on his bed, Cave felt intense pain coming from his rectum and stomach areas. (¶ 44). Cave immediately tried to get to the medical unit, and he arrived there at approximately 5:30 p.m. (¶ 47).

When Cave reached the medical unit, he was seen by the attending nurse, Rowe. (¶ 48). Cave had multiple marks, scratches, abrasions, and lumps on him. (¶ 59). Nevertheless, when Cave explained the assault and his pain, Rowe immediately and without assessment stated, "I don't believe you." (¶¶ 49, 51). As Cave refused to leave the medical unit, Rowe left the room to get multiple corrections officers. (¶ 50). Instead of performing his own assessment, Rowe had corrections officers evaluate Cave. (¶¶ 51-54). At some point, Rowe noted that Cave's medical condition was "life-threatening." (¶ 63). Instead of calling for an ambulance, however, Rowe notified Gaxiola about the situation approximately two hours after Cave first reported to the medical unit. (¶ 61).

No doctor was present at Everglades CI at this time. ( ¶ 55). Gaxiola was on-call but she did not come to Everglades CI to evaluate Cave. (¶ 56-57). Cave kept telling Rowe that he was in intense pain and needed to be brought to the emergency room. (¶ 65). Nevertheless, Cave was kept standing for hours at the medical unit (because he could not sit with a metal rod left in his abdomen) while Wexford and FDOC tried to determine who would pay for the emergency medical services and ambulance. (¶¶ 64, 67). Even one local law enforcement officer at the scene stated "this is wrong," regarding the length of time Cave was forced to wait. (¶ 70.) Wexford never authorized an ambulance to take Cave to Jackson Memorial Hospital. (¶¶ 68, 71).

Wexford has a policy or practice of minimizing medical treatment to lower costs, even in life-threatening conditions. (¶ 118). The reason for this policy is that Wexford is attempting to maximize profits by denying pain relief and medical services as well as shifting the costs for

4

medical and ambulance services to others. (¶¶ 67, 115). Wexford did not have a doctor present at Everglades CI, nor did a doctor ever come to Everglades CI to assess Cave on April 22, 2014. (¶ 56-57). This policy or practice includes refusing to call an ambulance when inmates like Cave present with a life-threatening condition. (¶¶ 68, 120). Wexford's policy or practice, as implemented by its employees, caused Cave to wait from 5:30 p.m. to 11:30 p.m. on April 22, 2014 before being allowed to leave Everglades CI for the emergency room at Jackson Memorial Hospital. (¶ 69). Moreover, Cave did not arrive at Jackson Memorial Hospital until approximately 1:30 a.m. on April 23, 2014. (¶ 77).

At Jackson Memorial Hospital, the response was immediate to Cave's symptoms. (¶ 78). Cave was immediately rushed to the emergency room. *Id.* He was immediately prepped for surgery, and he received a colostomy. (¶ 79). After the surgery, the treating doctor told Cave, "[i]f you were brought here earlier, the colostomy could have been prevented." (¶ 80). Cave remained at the hospital for multiple days following the surgery. (¶ 81).

Even after Cave returned to Everglades CI, Wexford's employees continued to deny basic services and medication to Cave resulting from his surgery. (¶¶ 86-89, 91-93, 98-104). On May 9, 2014, Cave bled excessively into his colostomy bag and declared a medical emergency. (¶ 84). Cave's situation was relayed to the on-call medical provider, Louissant; however, Louissant did not come in to Everglades CI to see Cave. (¶ 87). Instead, Louissant denied any pain medication and simply ordered Cave back to confinement without any examination. (¶ 88). On May 10, 2014, Cave again excessively bled into his colostomy bag and a corrections officer declared a medical emergency. (¶ 90). After Cave was brought to the medical unit on a stretcher, he had to wait for approximately three hours for Gaxiola, the on-call physician, to arrive. (¶ 91). Gaxiola again did not evaluate, let alone speak with, Cave. (¶ 92). Instead, Cave was returned to

his cell in severe pain. (¶ 93).  On May 12, 2014, Cave had a third incident of excessive bleeding into this colostomy bag that was declared a medical emergency. (¶¶ 94, 98).  Despite being in severe pain, Cave was denied any pain medication. (¶ 102).  Cave requested to be brought to an outside hospital to determine why he was bleeding so excessively; but, Ortega ignored his request. (¶ 101).  Ortega followed Wexford's cost-cutting policy and intended to cause Cave harm. (¶ 102).  Ortega ordered that Cave be shackled to his bed in the infirmary despite the advice of a corrections officer. (¶ 103).   Cave was the only inmate handcuffed to his bed in general population. *Id.*

Despite filing grievances in this mater, the warden, corrections officers, and medical staff did not properly investigate the responses to his medical emergency. (¶ 114).  The FDOC and Everglades CI did not investigate the matter adequately. (¶ 109).  The warden, corrections officers, and medical staff at Everglades CI did not properly investigate or answer Cave's grievances. (¶ 110).  Cave was denied medical treatment and pain relief due to the fact that Wexford wanted to make as much money by denying basic pain relief and medical services on his case. (¶ 115).  Cave suffered from pain and emotional distress resulting from the assault and corresponding medical response by Wexford and its agents. (¶ 82).  Wexford acted outside the scope of its duties and in an arbitrary manner. (¶ 26).  Finally, Cave avers that all conditions precedent necessary to the filing of this action have been satisfied or waived., including but not limited to Cave complying with and exhausting all of his administrative remedies pursuant to the Prisoner Litigation Reform Act. (¶ 34.)

### III.   LEGAL STANDARD

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 663. The court is permitted to draw on its experience and common sense when determining whether a complaint states a plausible claim. *Id.* at 664. "[D]etailed factual allegations" are not required. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court considers the complaint in its entirety, including matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. *Ancata v. Prison Health Servs., Inc.*, 769 F. 2d 700, 703 (11th Cir. 1985). A "heightened pleading standard" does not apply to civil cases alleging liability under 42 U.S.C. § 1983. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993). In addition, all reasonable inferences should be drawn in favor of the plaintiff. *See Omar ex. rel. Cannon v. Lindsey*, 334 F. 3d 1246, 1247 (11th Cir. 2003).

IV.   ARGUMENT

    A.   **Cave Sufficiently States A Claim Of Deliberate Indifference.**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. A claim under § 1983 therefore requires: (i) a violation of a right

secured by the Constitution or laws of the United States, and (ii) that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). The limitations and scrutiny of the Eighth Amendment are applicable to the States through the Fourteenth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 345 (1981). It is settled law that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

The Eighth Amendment embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency against which penal measures are evaluated. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). Punishments which involve the unnecessary and wanton infliction of pain are repugnant to the Eighth Amendment. *Id.* at 103. The government is obligated to provide medical care for those whom it is punishing by incarceration. *Id.* Even less serious cases, where the denial of medical care may result in pain and suffering, fail to serve any penological purpose. *Id.* The deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain." *Id.* at 104. This is true whether the indifference is manifested by prison doctors in their response to prisoner's needs or by prison guards intentionally delaying access to medical care or intentionally interfering with prescribed treatment. *Id.* at 105. For damages and injunctive relief, the failure to give advance notice is not dispositive. *Farmer*, 511 U.S. at 847. A plaintiff may establish a defendant's awareness by reliance on any relevant evidence. *Id.*

    1. <u>Wexford is Subject to Section 1983 Liability as a Supervisor of Co-Defendants Rowe, Gaxiola, Ortega, and Louissant.</u>

  Wexford is subject to section 1983 liability as a supervisor under theories of respondeat superior or vicarious liability for the actions of its subordinates.  It is well settled that if a plaintiff sues a supervisor, there must be proof that the alleged injuries resulted from an official custom, policy, or practice. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978).  The plaintiff bears the burden of establishing a causal link between a government policy or custom and the injury which is alleged. *Byrd v. Clark*, 783 F.3d 1002, 1008 (11th Cir. 1986).  The Eleventh Circuit has held that supervisors who are not alleged to have personally participated in the constitutional violation which gave rise to the section 1983 action may nonetheless be liable for a constitutional deprivation "when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360-61 (11th Cir. 2003).  Such a causal connection may be established: (i) by a history of widespread abuse which puts the supervisor on notice of the need to correct the deprivation and he fails to do so, (ii) when a supervisor's "custom or policy . . . result[s] in deliberate indifference to constitutional rights," or (iii) "when [the] facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *See Cottone*, 326 F.3d at 1360-61 (citations and internal quotation marks omitted).

  The Eleventh Circuit has rejected the idea that "financial considerations must be considered in determining reasonableness of inmates' medical care to the extent that such rationale could ever be used by so-called 'poor' states to deny a prisoner the minimally adequate care to which he or she is entitled." *Harris v. Thigpen*, 941 F.2d 1495, 1509 (11th Cir. 1991).  In appropriate circumstances, deliberate indifference claims based on allegations of institutional

"cost-cutting" are cognizable. *See e.g., Walker v. Powell*, 2007 WL 4303766 (N.D. Fla. Dec. 10, 2007) (unrebuttable allegations that Plaintiff went from 180 to 140 lbs because prison meals were nutritionally inadequate due to cost-saving measures were sufficient to create a triable issue of fact).

Here, the Second Amended Complaint states that Wexford intentionally implemented and condoned a policy or practice of cost-cutting measures that denied or delayed Cave's medical treatment in life-threatening situations.  Denying and delaying medical treatment is tantamount to "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104; *Washington v. Dugger*, 860 F.2d 1018, 1021 (11th Cir. 1988).  Here, Wexford saved money by not providing medical care to Cave in the form of evaluations or pain medication.  The clearest example of Wexford knowing its cost-cutting / profit-maximizing measures would hurt inmates in life-threatening situations is its refusal to provide or call ambulances for inmates.  Ambulances are unique vehicles specifically designed to transport persons safely to places of treatment.  They are able to expedite travel and shorten the delay to medical providers through the use of flashing warning lights and sirens.  They are usually staffed by trained EMTs and are designed to provide medical treatment enroute to a hospital.  Moreover, drivers of ambulances are knowledgeable as to the location of the hospital to which they are traveling.   Therefore, by refusing to provide ambulances in life-threatening situations, Wexford had to know it was deliberating denying or delaying inmates the life-saving treatment they needed. Wexford had to know its policy was subjecting inmates to extreme risk in their transportation, especially in this situation when Cave could not sit down and was put in a regular FDOC transport van that took two hours to get to a nearby hospital.  Wexford knew that by cutting services and denying basic pain relief to inmates, inmates including Cave would suffer.

Here, we do not have a "disagreement over a matter of medical *judgment"* or whether governmental actors should have employed *additional* forms of treatment, as argued by Wexford.  *See* [DE 78] at 3 (emphasis added).  This case is about the <u>absence of judgment</u>, the <u>lack of any form of treatment</u>, and <u>the intentional delay</u> in sending Cave to Jackson Memorial (the only place where he could receive the necessary treatment).  Wexford's duties were completely abrogated and services were simply not provided.  The implementation and effects of an austere cost-cutting policy are evidenced by the absence or grossly inadequate treatment provided to Cave by Wexford's employees across the board.  Rowe immediately denied a valid claim even when Cave presented with lumps, abrasions, and other marks.  Often, Wexford did not have key medical providers at the hospital.  Even when these key medical providers were notified of Cave's life-threatening situations, they either did not come to Everglades CI or they did not assess Cave.  Basic pain relief medication was not provided, and saved Wexford money.  The three-hour delay it took Gaxiola to arrive after being notified of Cave's excessive bleeding on May 10, 2014 exemplifies a deliberate or wanton indifference to a patient's basic medical needs.  Louissant and Ortega refused Cave basic pain medication despite the fact that he recently had a surgery, was excessively bleeding from a colostomy bag (i.e. an open wound), and was in severe pain.  Ortega, on his part, had Cave shackled to his infirmary bed, despite an opposite recommendation by a corrections officer, after Cave requested outside treatment.   Cave also alleged that Wexford's employees intended to cause Cave harm.  Finally, the lack of a response to Cave's grievances shows that Wexford condoned its employees' actions.  Cave's factual assertions, and their permissible inferences, sufficiently plead a plausible claim for deliberate indifference against Wexford.  Therefore, Defendant's motion should be denied.

11

      2.      <u>A Six-Hour Denial or Delay of Medical Treatment is Sufficient to Establish a Claim of Deliberate Indifference to Serious Medical Need.</u>

A six-hour denial or delay of medical treatment is sufficient to establish a claim of deliberate indifference to serious medical need. *Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir. 1990) (approximate six-hour delay in medical treatment for "a serious and painful broken foot is sufficient to state a constitutional claim"). The Eleventh Circuit has provided guidance concerning the distinction between "deliberate indifference" and "mere negligence." For instance, "an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." *Lancaster v. Monroe County*, 116 F.3d 1419, 1425 (11th Cir. 1997). Alternatively, "[e]ven where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." *McElligot v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). A serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994).

    Here, Cave presented to the medical unit at Everglades CI with a serious medical need. There is no question that a metal object inserted into one's rectum and residing in one's abdomen presents a serious medical need. It was so obvious to Cave that, as soon as he recognized the localized pain, he immediately made his way to the medical unit. The serious medical need was so obvious that local law enforcement described the delay as being "wrong." Rowe noted that Cave's situation was "life-threatening." Rowe notified Gaxiola that the situation was "life-

threatening." Moreover, in its analysis supporting its motion to dismiss, Wexford does not dispute that Cave presented with a serious medical need.  *See* [DE 78].

Cave inexplicably waited approximately six hours with this serious medical condition from when he arrived at the medical unit to when he left Everglades CI.  He received no medical treatment during this delay and was denied an ambulance as result of the cost-cutting policy or practice of Wexford.  It then took over two hours to get Cave to the emergency room, approximately 22 miles away.  While he was being transported, Cave was not secured in the vehicle.  Moreover, the swift action by the medical team at Jackson Memorial Hospital evidences the life-threatening nature of the situation.  Finally, Cave was told by a doctor at Jackson Memorial Hospital that had he been brought to the emergency room sooner, his damages and injury would not have been as bad and his colostomy could have been avoided.  Sadly, the denial or delay of treatment was not an isolated incident, as evidenced by what happened on May 10th, 12th, and 13th.  Cave's allegations are more than sufficient to establish a claim of deliberate indifference to serious medical need.  Count I was adequately plead; therefore, the Defendant's motion to dismiss should be denied with respect to Count I.

    **B.**    **Wexford Is Not Immune As It Acted In A Manner Exhibiting Wanton And Willful Disregard of Plaintiff's Human Rights And Safety.**

Wexford is not immune to Plaintiff's negligence claims as it acted in a manner exhibiting wanton and willful disregard of Cave's human rights and safety.  Pursuant to Florida Statutes § 768.28(9)(a):

> **No officer, employee, or agent of the state** or of any of its subdivisions **shall be held personally liable in tort** or named as a party defendant in any action for any injury or damage suffered **as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety**, or property.  However, such officer, employee, or agent shall be considered an adverse witness

13

> in a tort action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function. The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

(emphasis added). Additionally, section 768.28(10)(a) states:

> **Health care providers** or vendors, or any of their employees or agents, **that have contractually agreed to act as agents of the Department of Corrections to provide health care services to inmates** of the state correctional system **shall be considered agents** of the State of Florida, Department of Corrections, for the purposes of this section, **while acting within the scope of and pursuant to guidelines established in said contract or by rule.** The contracts shall provide for the indemnification of the state by the agent for any liabilities incurred up to the limits set out in this chapter.

(emphasis added). Here, the only guideline or duty alleged or discussed was Cave's averment that Wexford was required pursuant to contract to provide medical and mental health care services to all persons confined in Everglades CI. *See* [DE 72] at ¶ 9; *see also* [DE 78]. Wexford has failed to argue that it or its employees acted within the scope of and pursuant to guidelines established in its contract with FDOC. *See* [DE 78. Moreover, it cannot. Discovery has not yet begun in this matter, and Wexford cannot assert in its initial responsive pleading that it acted within guidelines it fails to mention or of which the court is unaware.

Cave has alleged sufficient facts showing that Wexford completely abrogated its contractual duty to provide medical services. *See supra* at 2-6. Cave alleged that the Wexford acted outside the scope of its duties. *See supra* at 6. Wexford's attempt to reframe the issue as one of medical malpractice should also be denied. As stated above, this case is about the absence of judgment, the lack of any form of treatment, and the intentional delay in bringing Cave to the only place that could provide the necessary treatment. *See supra* at 11. Plaintiff's

14

claims are not that Wexford and its employees made a medical error, but that, for reasons unrelated to medical judgment or performance the defendants consciously chose not to provide the needed care. *See Kellar v. Fla. Dep't of Corr.*, 4:14-cv-84-RH-GRJ, 2015 U.S. Dist. LEXIS 163636, *29 (N.D. Fl. Oct. 1, 2015).  The key inquiry is whether the action arises out of any medical diagnosis, treatment, or care and if there is any doubt as to the applicability of such a statute, the question is generally resolved in favor of the claimant. *J.B. v. Sacred Heart Hosp.*, 635 So. 2d 945, 946 (Fla. 1994) (finding that the negligent use of non-patient brother as a transporter for the patient not medical treatment).  Here, medical treatment never began at the hands of Wexford or its employees on April 22, 2014.   Wexford did not meet the simplest obligations to providing medical treatment (i.e. having medical providers actually <u>go to work</u> and <u>meet with inmates</u>) due to Wexford's cost-cutting policy or practice.  Cave suffered compensable harm as a result.  The factual allegations and the reasonable inferences drawn therefrom evidence wanton and willful disregard of Cave's human rights and safety.

     Wexford condoned its employees' conduct as evidenced by its own policy to save as much money for profit and in its failure to investigate or answer Cave's grievances.  The denial and delay of medical treatment was not an isolated incident, and in the softest of terms is accurately described as "inadequate medical treatment."  Moreover, all factual assertions were incorporated into each count, putting Wexford on notice as to the nature of the claims.  Wexford is therefore not immunized or entitled to hide its liability behind sections 768.28 and 766.106, or their notice provisions.  For all the aforementioned reasons, the Court should deny Wexford's motion to dismiss with respect to both counts.

### C. Cave Asserted That All Conditions Precedent Had Been Satisfied Or Waived.

Cave asserted that all conditions precedent necessary to the filing of the action had been satisfied or waived, including but not limited to Cave complying with and exhausting all of his administrative remedies pursuant to the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e(a). (¶ 34.)  Cave also asserted that the warden, corrections officers, and medical staff at Everglades CI did not answer his grievances. (¶ 110).  As such, the Court must accept as true that Cave has filed multiple grievance, that his multiple grievances went unanswered, and that he has adequately exhausted his administrative remedies as required by law.  The Court should not "assume" that Cave has failed to do so, as the Defendant asks. *See* [DE 78] at 22.  The Defendant bears the burden of proving that the Plaintiff has failed to exhaust his available administrative remedies. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008).  Discovery has just begun in this matter, and the Defendant has failed to make any factual assertions other than to cite statutes that the State of Florida requires an inmate grievance procedure. *See* [DE 78] at 18-19; *see Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) ("First, the court looks to the factual allegations in the defendant's motion to dismiss…..").  The Defendant *assumes* that Everglades CI provides inmates with a proper grievance procedure simply because state law requires it.  *See* [DE 78] at 19 ("Each institution ensures all inmates have access to the grievance procedure, including providing assistance through the institution's library if requested. See §33-103.001(2)"). Nowhere does the Defendant make any properly supported factual assertion that Cave failed to exhaust his remedies. Cave specifically asserted that he did exhaust his administrative remedies.  Therefore, the Defendant's motion should be denied.

Moreover, the issue of whether notice under § 768.28(6)(a) was timely given should be raised by answer or judgment on the pleadings, not a motion to dismiss. *Cabral v. City of Miami*

16

*Beach*, 76 So. 3d 324, 326 (Fla. 3d DCA 2011). Rule 1.120(c) of the Fla. R. Civ. P. further states that "[i]n pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred." After the plaintiff alleges performance of conditions precedent to a lawsuit, the burden then shifts to the defendant to deny with specificity and particularity that the required notices were given, and to present this issue to the trial court in the context of a summary judgment motion or motion for judgment on the pleadings. *Cabral*, 76 So. 3d at 327. Wexford has failed to meet its burden, procedurally or factually. *See* [DE 78] at 18.

   **D.**  **Cave Is Entitled To Punitive Damages.**

  Cave is entitled to punitive damages in this matter as punitive damages could be awarded for reckless indifference to an inmate's federal protected rights. *See Smith v. Wade*, 461 U.S. 30, 51 (1983). Punitive damages may be awarded *not only* for "actual malicious intent," but also for "recklessness" *See id.* at 49 ("While, *arguendo*, an intent standard may be easier to understand and apply to particular situations than a recklessness standard, we are not persuaded that a recklessness standard is too vague to be fair or useful"). "Outrageous," "callous," "repugnant," and "reckless" are the proper adjectives used to describe the implementation of Wexford's policy or practice in this matter. Aside from precedent, the Court could also apply the golden rule to these facts to assess whether Cave's allegations have risen to a level justifying punitive damages. Had any nonincarcerated person found themselves in a situation where (i) they could not sit down, (ii) had abrasions and lumps on their body, and (iii) had intense pain coming from their rectum and abdomen areas, said person would obtain immediate medical treatment. No rational person would voluntarily wait over six hours before calling emergency responders. No rational person would choose a van over an ambulance. No rational person would choose a colostomy

bag if they did not need one, or refuse to take pain medication if they were in intense pain and suffering.  The fact that Cave was an inmate does not allow Wexford to subject him to these conditions simply to lower operating costs.  As argued above, Cave has pled sufficient factual allegations to establish deliberate, wanton, and/or reckless indifference to justify a demand for punitive damages.  Therefore, the Court should deny the Defendant's motion to strike pursuant to Fed. R. Civ. P. 12(f).

### V.      CONCLUSION

For all of the asserted facts and permissible inferences that must be construed in the Plaintiff's favor, Cave has sufficiently plead a plausible claim for deliberate indifference and willful or wanton negligence.  Cave sufficiently alleged that Wexford had a practice or policy of denying or delaying necessary medical treatment to save money and earn higher profit. Cave suffered from a serious, life-threatening medical condition.  Taking into account his condition and needs, Wexford's policy and actions were a deliberate and wanton infliction of pain.  Many detailed assertions are made and causation is properly asserted in the pleadings.   A reasonable inference can be made from the facts that any scienter element is also satisfied.  Finally, Wexford was acting under color of authority by running the medical unit at Everglades CI on behalf of the FDOC.  For the foregoing reasons, the Plaintiff requests that the Defendant's motion to dismiss be denied with respect to all counts.

| | |
|---|---|
| Date: September 30, 2018 | Respectfully Submitted,<br>ALEX M. CAVE<br>By his attorney,<br><br>/s/ Emir Sehic<br>FL Bar #: 0108914<br>BBO# 687938<br>SEHIC LAW, PLLC<br>501 Main Street, Rte 6A<br>P.O. Box 2071<br>Dennis, MA 02638<br>Tel: (774) 722-5517<br>Fax: (774) 221-6001<br>*esehic@sehiclaw.com* |

## **CERTIFICATE OF SERVICE**

    I hereby certify that this document was filed with the Clerk of Court through the CM/ECF system this September 30, 2018.  I also certify that the foregoing document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) or in some other authorized manner for those counsel or parties who are not authorized to received electronic Notice of Electronic Filing.

/s/ Emir Sehic
FL Bar #: 0108914
