# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 1:18-cv-21587-UU

ALEX M. CAVE,

      Plaintiff,

v.

JULIE L. JONES, *et al.*,

      Defendants.

_____/

## OMNIBUS ORDER ON MOTIONS TO DISMISS SECOND AMENDED COMPLAINT

THIS CAUSE is before the Court upon the following motions (collectively, the "Motions"):

1. **D.E. 78** – Motion to Dismiss Second Amended Complaint filed by Defendant Wexford Health Sources, Inc. ("Wexford");

2. **D.E. 79** – Motion to Dismiss Second Amended Complaint filed by Defendant Dr. Oscar Ortega ("Dr. Ortega");

3. **D.E. 80** – Motion to Dismiss Second Amended Complaint filed by Defendant Ricky Rowe ("Nurse Rowe");

4. **D.E. 81** – Motion to Dismiss Second Amended Complaint, to Strike Claim for Punitive Damages, and to Grant Qualified Immunity filed by Defendant Julie Jones ("Jones"), Secretary of the Florida Department of Corrections ("FDOC");

5. **D.E. 102** - Motion to Dismiss Second Amended Complaint, to Strike Claim for Punitive Damages, and to Grant Qualified Immunity filed by Defendant Juan Martell ("Sgt. Martell");

6. **D.E. 109** - Motion to Dismiss Second Amended Complaint, to Strike Claim for Punitive Damages, and to Grant Qualified Immunity filed by Defendant Andre Payton ("Sgt. Payton");

7. **D.E. 110** - Motion to Dismiss Second Amended Complaint, to Strike Claim for Punitive Damages, and to Grant Qualified Immunity filed by Defendant Islande Chery ("Ofc. Chery");

1

8. **D.E. 114** - Motion to Dismiss Second Amended Complaint, to Strike Claim for Punitive Damages, and to Grant Qualified Immunity filed by Defendant Gregory Hines ("Cpt. Hines");

9. **D.E. 117** - Motion to Dismiss Second Amended Complaint, to Strike Claim for Punitive Damages, and to Grant Qualified Immunity filed by Defendant Tevaris Williams ("Sgt. Williams");

10. **D.E. 120** - Motion to Dismiss Second Amended Complaint, to Strike Claim for Punitive Damages, and to Grant Qualified Immunity filed by Defendant Jonathan Person ("Ofc. Person"); and

11. **D.E. 125** – Motion to Dismiss Second Amended Complaint filed by Defendant Dr. Dora A. Gaxiola ("Dr. Gaxiola").

THE COURT has considered the Motions and the pertinent portions of the record and is otherwise fully advised in the premises.

**<u>BACKGROUND</u>**

The facts below come from the Second Amended Complaint (D.E. 72) (the "Complaint").

**I.   OVERVIEW**

Plaintiff Alex M. Cave ("Plaintiff") was[1] an inmate in the custody of the FDOC at the Everglades Correctional Institution ("Everglades CI"). Compl. ¶ 1. On April 22, 2014, Plaintiff was sexually assaulted by at least one other inmate at Everglades CI and had a metal object inserted into his rectum, affecting his intestines. *Id.* Plaintiff reported this medical emergency to a corrections officer in his dormitory and to medical staff but was refused any medical attention for several hours. *Id.* It was more than six hours after Plaintiff arrived to the Everglades CI infirmary that he was finally transported to the emergency room at Jackson Memorial Hospital ("JMH"). *Id.* At JMH, Plaintiff was immediately prepped for surgery, had the metal object removed from his body, and ultimately received a laparotomy and colostomy. *Id.*

---

[1] Plaintiff has since moved to Massachusetts and, as of the time the Complaint was filed, is incarcerated. *Id.* ¶ 6.

Upon his return to Everglades CI, Plaintiff suffered from multiple complications to his post-surgery recovery, including excessive bleeding. *Id.* ¶ 2. On various dates in early May 2014, Plaintiff once again reported medical emergencies due to the excessive bleeding but was intentionally ignored and mistreated. *Id.* From the date of the assault through his post-surgery recovery, Plaintiff alleges that he received no or inadequate care despite his urgent medical needs, and the Defendants systematically, intentionally, and/or with grossly indifference put Plaintiff's safety and health in jeopardy. *See generally id.* ¶¶ 1-2.

## II.  THE ASSAULT

During the early afternoon of April 22, 2014, Plaintiff was assaulted and knocked unconscious by multiple inmates while using the bathroom of the Everglades CI recreation yard. *Id.* ¶ 35. The bathroom area was not being monitored by security cameras nor corrections officers at the time. *Id.* ¶ 39.

Once Plaintiff regained consciousness, he saw that he had been completely stripped of his clothes and was fully naked. *Id.* ¶ 36. He was in a great deal of pain and had multiple marks, scratches, abrasions, and lumps on his body. *Id.* ¶¶ 37, 59. After dressing himself, Plaintiff returned to his cell in the dormitory in which he was housed. *Id.* ¶ 43. Immediately upon sitting down on his bed, Plaintiff felt intense pain coming from his rectum and stomach areas. *Id.* ¶ 44. He then approached the corrections officer in the supervisory "bubble" of the dormitory and declared a medical emergency. *Id.* ¶ 45. The officer refused to help Plaintiff. *Id.* Plaintiff returned to his cell, where he waited (standing up) until shift change had occurred and the cell doors were opened for chow call. *Id.* As soon as he could, Plaintiff went straight to the medical unit himself. *Id.*

### III.   PLAINTIFF SEEKS CARE AT THE EVERGLADES CI MEDICAL UNIT AND IS FORCED TO WAIT FOR HOURS

Plaintiff reached the medical unit of Everglades CI at approximately 5:30 p.m. *Id.* ¶ 47. When he reached the medical unit, Plaintiff was seen by Nurse Rowe, the attending nurse. *Id.* ¶ 48. Plaintiff explained the sexual assault and his pain to Nurse Rowe, but Nurse Rowe responded by saying "I don't believe you." *Id.* ¶ 49. Plaintiff refused to leave the medical unit. *Id.* ¶ 50. Nurse Rowe left and then returned with multiple corrections officers, who had flashlights and a handheld metal scanner. *Id.* Nurse Rowe had the corrections officers evaluate Plaintiff. *Id.* ¶ 51. Specifically, Plaintiff was told to bend over and "spread [his] cheeks" while the corrections officers waived the metal detector by Plaintiff's posterior. *Id.* ¶ 52 (alteration in original). The metal detector did not go off near Plaintiff's bottom, but it did go off when the corrections officers waved the detector over his stomach. *Id.* ¶ 53.

After the corrections officers reported the metal detector results to Nurse Rowe, Plaintiff had to stand in the room for several hours while Nurse Rowe and the officers figured out what to do. *Id.* ¶ 54. No doctor was present at Everglades CI at this time. *Id.* ¶ 55. Dr. Gaxiola, the on-call doctor at the time, was located off-site. *Id.* ¶ 56. Nurse Rowe notified Dr. Gaxiola about Plaintiff's situation at approximately 7:30 p.m.—roughly two hours after Plaintiff had first reported to the medical unit. *Id.* ¶ 61. Nurse Rowe noted to Dr. Gaxiola that Plaintiff's condition was "life-threatening." *See id.* ¶¶ 62, 63. But Dr. Gaxiola did not come to Everglades CI to evaluate Plaintiff. *Id.* ¶ 57. As a result, no Everglades CI doctor (all of whom are employed by Wexford) evaluated Plaintiff that day. *See id.* ¶¶ 46, 58.

Plaintiff continued to stand at the medical unit, waiting for Dr. Gaxiola, Wexford, and/or FDOC to call an ambulance to take him to the emergency room. *Id.* ¶ 64. Plaintiff repeatedly asked

the medical staff, including Nurse Rowe and the officers present, to be taken to the emergency

room, as he was in intense pain. *Id.* ¶ 65. All intentionally ignored him. *Id.*

## IV.   THE OFFICERS REFUSE TO CALL AN AMBULANCE AND EVENTUALLY FORCE PLAINTIFF TO LAY IN A VAN FOR A TWO-HOUR RIDE TO JMH

The local sheriff's department or local law enforcement was called to the Everglades CI

medical unit, because Plaintiff's situation was being treated as a sexual assault case. *Id.* ¶ 60. One

of the local law enforcement officers noted the unusually long time Plaintiff was having to wait

for medical treatment; this officer told the Everglades CI staff that "this is wrong." *Id.* ¶ 70. The

officer stated that Everglades CI needed to arrange for Plaintiff to be taken to JMH immediately,

or else the officer would take Plaintiff in the officer's own vehicle directly. *Id.*

Plaintiff was not taken to JMH by ambulance due to the absence of a referral. *Id.* ¶ 71.

Wexford and FDOC have a policy of requiring a referral before allowing any inmate to go to the

emergency room of an outside provider. *Id.* ¶ 66. The rationale behind this policy is that FDOC

and Wexford seek to minimize operating costs and maximize profits, respectively, and want to

avoid having to  pay for the medical and ambulance services a  required by any inmate (including

Plaintiff in this instance). *Id.* ¶ 67.

Instead, corrections officers directed Plaintiff to enter into a FDOC state van, where he lay

horizontally on the floor of the vehicle, without a seat belt or any other stabilizing system to keep

him from sustaining further internal injury.. *Id.* ¶ 72. By the time the van left Everglades CI to

head to JMH, it was 11:30 p.m.—six hours after Plaintiff first reported to the medical unit. *Id.* ¶

69. Ofc. Chery and Ofc. Person drove the van. *Id.* ¶ 73. Even though JMH is 21.2 miles away from

Everglades CI, Ofcs. Chery and Person took two hours to get Plaintiff to the hospital. *Id.* ¶¶ 73,

75-76. Plaintiff lay on the van's floor for the entire ride. *Id.* ¶ 72.

## V.    PLAINTIFF'S TREATMENT AT JMH

Plaintiff arrived at JMH at approximately 1:30 a.m. on April 23, 2014. *Id.* ¶ 77. He was immediately rushed to the emergency room and a long metal rod was discovered in his rectum and abdomen. *Id.* ¶ 78. Plaintiff was immediately prepped for surgery and received a laparotomy and colostomy. *Id.* ¶ 79. After the surgery, while Plaintiff was recovering at JMH, a treating doctor told Plaintiff: "If you were brought here earlier, the colostomy could have been prevented." *Id.* ¶ 80. Plaintiff remained at JMH for multiple days post-surgery. *Id.* ¶ 81.

## VI.    BACK AT EVERGLADES CI, PLAINTIFF RECEIVES INADEQUATE POST-SURGERY MEDICAL CARE AND THREATS FROM OFFICERS

When Plaintiff was brought back to Everglades CI, he remained in the infirmary for some time. *Id.* ¶ 83. Over the coming days, Plaintiff would suffer multiple harmful encounters with Everglades CI staff.[2]

### A.  <u>May 10, 2014</u>

The next day, at approximately 6:30 p.m., Plaintiff again started to excessively bleed into his colostomy bag. *Id.* ¶ 90. Plaintiff immediately contacted a non-party corrections officer, Sgt. Gomez. *Id.* Sgt. Gomez again promptly called the medical unit after witnessing the bag full of blood. *Id.* Medical staff came to Plaintiff's cell, lifted Plaintiff up, and took him on a stretcher to the medical unit. *Id.* This time, Plaintiff was seen by non-party Nurse Perez, who promptly called the on-call physician, Dr. Gaxiola. *Id.* ¶ 91. Plaintiff sat in the medical unit shackled and cuffed, in severe pain, waiting for Dr. Gaxiola arrive. *Id.* Dr. Gaxiola arrived at approximately 9:30 p.m.—

---

[2] Defendant Marie Louissant ("Louissant") was dismissed without prejudice from this action on November 2, 2018, due to Plaintiff's failure to timely effectuate service. D.E. 122. Accordingly, the Court omits from this Background section those portions of the Complaint pertaining to a May 9, 2014, encounter between Louissant and Plaintiff. *See* Compl. ¶¶ 84–89. Likewise, Defendant Anthony Darrel Alexander ("Ofc. Alexander") was dismissed without prejudice from this action on October 11, 2018, due to Plaintiff's failure to timely effectuate service. D.E. 96. Accordingly, the Court omits from this section those portions of the Complaint pertaining to a May 13, 2014, encounter between Ofc. Alexander and Plaintiff. *See* Compl. ¶¶ 105–106.

three hours after Plaintiff had alerted Sgt. Gomez about the bleeding. *Id.* Rather than evaluating Plaintiff, Dr. Gaxiola simply went into her office, refusing to speak with Plaintiff, and told the corrections officers to take Plaintiff back to his cell. *Id.* ¶ 92. Dr. Gaxiola did not appear to care about Plaintiff's pain and deliberately ignored him. *Id.* After he was brought back to his cell, Plaintiff had to clean himself from the excessive bleeding and remained in severe pain. *Id.* ¶ 93.

### B. May 12, 2014

On May 12, 2014, Plaintiff had a third incident of excessive bleeding from the surgical incision. *Id.* ¶ 94. Plaintiff called a medical emergency at approximately 2:45 p.m. *Id.* This time, Cpt. Hines arrived to Plaintiff's cell, along with Sgt. Martell, Sgt. Payton, Ofc. Williams, and Ofc. Alexander. *Id.* Cpt. Hines remarked, "Next time [Plaintiff] has a medical emergency, leave him be, maybe he'll bleed to death." *Id.* ¶ 95. Neither Cpt. Hines, nor Sgt. Martell, nor Sgt. Payton, nor Ofc. Williams, nor Ofc. Alexander took any steps to send Plaintiff to the medical unit. *Id.* ¶ 96. They intended for Plaintiff to suffer. *Id.*

Plaintiff passed out from the excessive bleeding. *Id.* ¶ 97. After seeing all of the other above-named corrections personnel doing nothing but standing around while Plaintiff was unresponsive, Sgt. Gomez declared a medical emergency. *Id.* ¶ 98. Plaintiff was brought to the infirmary on a stretcher. *Id.* ¶ 99.

At the infirmary, Plaintiff was evaluated by Dr. Ortega. *Id.* Dr. Ortega told the officers that Plaintiff needed to stay in the infirmary due to his serious medical condition. *Id.* ¶ 100. Plaintiff was admitted to the infirmary accordingly. *Id.* Plaintiff asked Dr. Ortega to be taken to an outside hospital to determine why Plaintiff was bleeding so excessively. *Id.* ¶ 101. Dr. Ortega ignored Plaintiff and simply said that Plaintiff was to stay in the infirmary. *Id.* Dr. Ortega did not prescribe Plaintiff any pain medication despite Plaintiff being in severe pain. *Id.* ¶ 102. The reason for not

prescribing the pain medications, Plaintiff alleges, is that Dr. Ortega was following cost-cutting policies and intended to harm Plaintiff. *Id.* ¶ 102.

Plaintiff was shackled to the infirmary bed. *Id.* ¶ 103. In fact, Plaintiff was the <u>only</u> general population inmate in the infirmary to be shackled to his bed. *Id.* Sgt. Gomez noted this discrepancy and suggested to Dr. Ortega that Plaintiff's restraints should be removed. *Id.* Dr. Ortega refused.[3] *Id.* Being the only one shackled, Plaintiff was left vulnerable to any inmate that was around, to potentially include his prior attackers. *Id.* ¶ 104. Plaintiff was in fear for his safety and suffered great emotional distress, in addition to his physical pain. *Id.*

## VII.  SYSTEMIC PROBLEMS WITH EVERGLADES CI AND THE FDOC CONTRIBUTED TO PLAINTIFF'S RECEIVING INADEQUATE CARE

Plaintiff's claims are directed not only toward the individual corrections officers and medical providers identified above, but also toward Wexford (who, as contractor with the FDOC, is responsible for employing and staffing medical personnel at Everglades CI) and Jones[4] (who, as Secretary of the FDOC, is ultimately responsible for the overall operation of Everglades CI, including staffing and training of corrections officers, investigating and addressing prisoner grievances, and setting policies regarding prisoner health and safety). *See generally id.* ¶¶ 8-10, 27-33, 38-42, 46, 66-67, 109-115, 117-18, 119-20, 122, 126, 128-29, 131.

The specific allegations as to Wexford and Jones can be summed up as follows. First, Wexford and Jones have implemented policies, when it comes to inmate medical services, of maximizing profits and minimizing costs (respectively), which policies are afforded paramount importance over inmate well-being. *See generally id.* ¶¶ 118-120, 127-129. As an example,

---

[3] The Complaint alleges that Dr. Ortega "denies [Sgt. Gomez's] suggestion." *Id.* It is not entirely clear whether Plaintiff intended for this to mean that Dr. Ortega now denies that Sgt. Gomez made any suggestion, or instead, that Dr. Ortega at that time refused to follow Sgt. Gomez's suggestion—that is, refused to unshackle Plaintiff. Viewing the facts in the light most favorable to Plaintiff, the Court adopts the latter interpretation.

[4] The Complaint refers to Jones and the FDOC interchangeably. *See id.* ¶ 8. Jones is sued in both her individual capacity and her official capacity as FDOC Secretary.

Wexford and Jones require a doctor referral before allowing any inmate to go to the emergency room of an outside provider, to avoid having to incur outside medical provider and ambulance costs. *See id.* ¶¶ 66-68. This policy resulted in the inordinate delay of taking Plaintiff to JMH, as well as Plaintiff's having to ride to JMH in a state van instead of an ambulance. *See id.* ¶¶ 66-69, 120, 129. The policy also motivated Dr. Ortega's treatment decisions on May 12, 2014. *See id.* ¶¶ 101-02.

Second, as to Jones, inmates within the FDOC system are completely dependent upon the FDOC (i.e., Jones[5]) to provide them with physical security. *Id.* ¶ 27. Security within the FDOC system is provided through a combination of measures, including the presence of corrections officers, regular rounds by these officers, and the presence of security cameras. *Id.* ¶ 28. But at and around the time of Plaintiff's attack, Everglades CI was not properly manned, lacked experienced corrections officers, and lacked sufficient security cameras and safety measures to adequately insure the physical safety of its prisoners. *Id.* ¶ 1. Specifically, Everglades CI was not properly equipped with adequate security cameras in the recreational yards in which Plaintiff was attacked. *Id.* ¶ 38. The bathroom area where Plaintiff was assaulted was not being monitored by security cameras nor corrections officers at this time. *Id.* ¶ 39. Plaintiff alleges that, had an adequate number of security cameras been installed and positioned over the area, Plaintiff would not have suffered the serious assault and resulting damage. *Id.* ¶¶ 40, 117, 126. Likewise, Plaintiff attributes fault to the fact that the median length of corrections officers' experience at Everglades CI was less than one year at the time of the incident. *Id.* ¶¶ 41-42. Plaintiff claims that if more experienced officers had been on dut, he would not have suffered the attack and harm. *See id.*; *see also id.* ¶¶ 117, 126.

---

[5] *See supra* n.5.

### VIII.    SUMMARY OF CLAIMS

Plaintiff brings two counts, each against all Defendants. Count I alleges that the Defendants exhibited deliberate indifference to a substantial likelihood of serious harm (by failing to provide sufficient security to prevent or stop the attack) and/or serious medical need (by intentionally providing inadequate medical treatment and implementing policies or practices that amount to deliberate indifference of all prisoners' medical needs), in violation of 42 U.S.C. § 1983 and the U.S. Constitution's Eighth Amendment, made applicable to the States through the Fourteenth Amendment.[6] Count II alleges that, even if Defendants' conduct does not amount to deliberate indifference, it nevertheless amounts to gross negligence or ordinary negligence. Plaintiff seeks compensatory and punitive damages, reasonable attorney's fees and costs, a declaratory judgment stating that the Defendants have violated Plaintiff's Eighth and Fourteenth Amendment rights, a permanent injunction requiring Jones and any medical provider contracted by the State (including Wexford) to immediately provide transportation using ambulances and pain relief for all FDOC prisoners who have a "life-threatening condition," and any further relief the Court deems appropriate. *Id.* ¶¶ 124, 133.

Each Defendant has moved to dismiss the Complaint in its entirety. The Motions are now ripe for disposition.

### **LEGAL STANDARD**

To state a claim, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." On a motion to dismiss the complaint for failure to state a claim upon which relief can be granted, the court takes the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.

---

[6] *See Estelle v. Gamble*, 429 U.S. 97, 101 (1976).

*Edwards v. Prime Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). The Court does not view each fact in isolation, however, but considers the complaint in its entirety. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Conclusory allegations will not suffice to state a claim; the complaint must allege sufficient facts to state a plausible claim to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* Determining whether a complaint states a plausible claim for relief is a context-specific undertaking that requires the court to draw upon its judicial experience and common sense. *Id.* at 679.

## ANALYSIS

### I.   THE MEDICAL DEFENDANTS

Defendants Wexford, Dr. Ortega, Nurse Rowe, and Dr. Gaxiola (collectively, the "Medical Defendants") filed substantially similar Motions. The Court addresses their arguments simultaneously.

The Medical Defendants argue that the claims against them should be dismissed for the following reasons: (A) Plaintiff has failed to state a claim upon which relief can be granted for deliberate indifference; (B) the Medical Defendants are immune from Plaintiff's negligence claim pursuant to Florida Statutes § 768.28; (C) Plaintiff has failed to comply with the presuit requirements to bring a medical negligence claim pursuant to Florida Statutes §§ 766.104 through 766.106; and (D) Plaintiff has failed to exhaust his administrative remedies prior to filing suit.

D.E. 78 at 2-3; D.E. 79 at 2; D.E. 80 at 2; D.E. 125 at 2. The Medical Defendants also argue that, should any of the claims survive, Plaintiff's request for punitive damages should be stricken.

### A. **Failure to State a Claim for Deliberate Indifference**

Section 1983 creates a private right of action against persons who, under color of law, subject a plaintiff to a deprivation of federally-protected rights. 42 U.S.C. § 1983. To state a Section 1983 claim, a plaintiff must allege that the defendant acted under color of state law and that the defendant's actions deprived the plaintiff of a federal right. *See West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978)). The facts that a plaintiff must plead in order to allege the violation of a federal right depend upon the right allegedly violated. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (explaining that the factors necessary to establish a *Bivens* violation, as analogous to a § 1983 suit, "will vary with the constitutional provision at issue").

In this case, Plaintiff alleges that the Medical Defendants violated the Eighth Amendment's proscription against cruel and unusual punishment by denying him medical treatment. The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (internal quotation omitted). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106.

"To prevail on a claim of deliberate indifference to serious medical need . . . a plaintiff must show: (1) a serious medical need; (2) the defendant['s] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Gilmore v. Hodges*, 738 F.3d 266, 273-74 (11th Cir. 2013) (quoting *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir.

2010)). This analysis requires Plaintiff to satisfy an objective and a subjective requirement. *Bingham v. Thomas*, 654 F.3d 1171, 1175-76 (11th Cir. 2011) (citing *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000)).

### 1.   A Serious Medical Need

First, Plaintiff must allege that he was deprived of medical care for an objectively serious medical need. *Bingham*, 654 F.3d at 1176. "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention'" *Id.* at 1176 (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)). The Medical Defendants do not challenge this element of the deliberate indifference test, and the Court readily finds that Plaintiff has adequately alleged he suffered from serious medical needs both before and after his visit to JMH.

### 2.   The Medical Defendants' Deliberate Indifference to Plaintiff's Needs

Next, Plaintiff must show the Medical Defendants' subjective intent to punish by alleging facts demonstrating that they acted with deliberate indifference. *Id.* Deliberate indifference has three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than [gross] negligence." *Gilmore*, 738 F.3d at 274 (quoting *Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1158 (11th Cir. 2010)).

Conduct that is more than negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all. *Bingham*, 654 F.3d at 1176 (citing *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)). For example, deliberate indifference may be shown by "a complete denial of readily available treatment for a serious medical condition," *id.* (citing *Harris v. Coweta County*, 21 F.3d 388, 393 (11th Cir. 1994)), or where "a defendant [] delays necessary treatment

for non-medical reasons." *Id.* (citing *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002)). "Even if a defendant is generally attentive to a prisoner's medical needs, however, one episode of misconduct can suffice for a finding of deliberate indifference." *Davison v. Nicolou*, 2016 WL 6404034, at *4 (S.D. Ga. Oct. 27, 2016) (citing *Rogers v. Evans*, 792 F.2d 1052, 1062 (11th Cir. 1986)). "[T]he provision of medical services in response to a serious medical risk is not necessarily sufficient to defeat a claim of deliberate indifference." *Id.* at *5 (citing *McElligot v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)). But a complaint that a medical professional has been negligent in diagnosing or treating a medical condition does not state a valid Eighth Amendment claim. *Estelle*, 429 U.S. at 106.

### 1. Nurse Rowe

Plaintiff here alleges more than negligence in Nurse Rowe's treatment. He alleges that (1) Nurse Rowe did not himself examine Plaintiff but rather had the corrections officers scan Plaintiff with the metal detector; (2) Nurse Rowe waited for hours before notifying Dr. Gaxiola (who never came), despite recognizing that Plaintiff's condition was "life-threatening"; and (3) intentionally ignored Plaintiff's requests to be taken to the emergency room, instead choosing to wait for local law enforcement to transport Plaintiff, in order to avoid incurring ambulance costs. This sufficiently states a claim that Nurse Rowe acted with deliberate indifference. *See Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir. 1990) ("[A]n unexplained delay of hours in treating a serious injury states a prima facie case of deliberate indifference."); *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) ("[I]f necessary medical treatment has been delayed for non-medical reasons, a case of deliberate indifference has been made out."); *see also Aldridge v. Montgomery*, 753 F.2d 970, 972–73 (11th Cir. 1985) (directed verdict for defense improper where

14

plaintiff set forth a question of fact as to whether jailers acted with deliberate indifference by ignoring plaintiff's bleeding cut for two and a half hours, where the cut ultimately required six stitches, and where delay was due to jailers awaiting instructions from detective).

Contrary to Nurse Rowe's contentions, these allegations are more than a claim of misdiagnosis or mistreatment. For example, in *Miller v. Correctional Services, Inc.*, a case on which Nurse Rowe relies, the prisoner/decedent had been exhibiting signs of decubitus ulcers[7] which, according to the plaintiff/estate representative, were inadequately treated, causing the prisoner/decedent to suffer from sepsis and die. 2010 WL 3723998, at *2 (M.D. Ala. Sept. 16, 2010). The plaintiff/estate representative alleged that the prisoner/decedent had "received some medical treatment, though it was not extensive." *Id.* The treatment included skin coverings, an application of diaper rash ointment, bilateral heel boots, several prescription psychiatric drugs, temperature reports, and treatment from physicians. *Id.* However, the plaintiff/estate representative identified various steps that were not taken, as well as inconsistencies in medical records and improper psychiatric treatment. *See id.* The district court found that these allegations could not support a deliberate indifference claim but rather supported at best a claim medical malpractice. *See id.* at *4–5. The plaintiff had "simply allege[d] that 'more should have been done.'" *Id.* at *5. Here, by contrast, Plaintiff alleges that Nurse Rowe refused to examine (let alone diagnose) Plaintiff and offered no medical treatment whatsoever, choosing instead to refused an emergency room referral out of cost concerns. In other words, Plaintiff does not just allege that "more" should have been done—he alleges that something, anything, should have been done.

---

[7] "Decubitus ulcers are commonly known as 'bed sores,' 'pressure sores,' or 'pressure ulcers,' and are defined as 'localized injury to the skin and/or underlying tissue usually over a bony prominence, as a result of pressure, or pressure in combination with shear.'" *Id.* at *2 n.4.

## 2.  Dr. Gaxiola

Plaintiff has also sufficiently alleged Dr. Gaxiola acted with deliberate indifference. First, Plaintiff alleges that (1) Dr. Gaxiola was the on-call doctor on the day of the assault; (2) Nurse Rowe (eventually) called Dr. Gaxiola regarding Plaintiff's "life-threatening" condition; and (3) despite receiving this call and despite being the on-duty doctor, Dr. Gaxiola did not come to Everglades CI to evaluate Plaintiff. Viewing these allegations in the light most favorable to Plaintiff, Plaintiff's allegations permit a plausible inference of intentional or reckless disregard. Next, Plaintiff alleges that on May 10, 2014, when Plaintiff was bleeding excessively into his colostomy bag, Dr. Gaxiola (1) was the on-call doctor that day, (2) received a prompt call from non-party Nurse Perez about Plaintiff's bleeding, and (3) arrived hours after Plaintiff first notified Everglades CI personnel about the bleeding, but refused to speak with or examine Plaintiff— opting instead to simply go into her office and tell corrections officers to take Plaintiff back to his cell. This too rises to the level of intentional or reckless disregard.

## 3.  Dr. Ortega

The allegations as to Dr. Ortega are a closer call. Plaintiff alleges that on May 12, 2014, following more post-colostomy bleeding, Dr. Ortega evaluated Plaintiff. Dr. Ortega recommended that Plaintiff be admitted to the infirmary, and Plaintiff accordingly was admitted. These actions demonstrate that Dr. Ortega was rendering at least <u>some</u> medical care to Plaintiff.

Nevertheless, Dr. Ortega's other alleged actions sufficiently support a plausible inference that Dr. Ortega took an easier but less efficacious course of treatment, failed or refused to provide necessary medical treatment, and/or provided treatment that was so cursory as to amount to no medical treatment at all. *Cf. Davison*, 2016 WL 6404034, at \*5–6. For example, Dr. Ortega allegedly recognized Plaintiff's excessive bleeding as a "serious medical condition." Compl.

¶ 100. The Complaint supports an inference that Dr. Ortega knew that, given the excessive bleeding, Plaintiff needed to go to an outside hospital but nevertheless deliberately kept him in the infirmary due to cost concerns. Likewise, Plaintiff sufficiently alleges that Dr. Ortega refused to prescribe Plaintiff necessary pain medication—bearing in mind that Plaintiff had just returned from major surgery and was experiencing apparent complications—because he was following cost-cutting policies. *See id.* ¶ 102. And the claims that Dr. Ortega unnecessarily ordered Plantiff to remain shackled support an inference of Dr. Ortega's allegedly malicious mindset.

### 4.   Wexford

Plaintiff's deliberate indifference claim against Wexford is premised on *Monell* liability.[8] *See Monell v. Dep't of Social Services*, 436 U.S. 658 (1978); *Buckner v. Toro*, 116 F.3d 450 (11th Cir. 1997) (extending the application of *Monell* to private corporations performing traditional public functions). To state a *Monell* claim, Plaintiff must allege that Wexford had a custom or policy that constituted deliberate indifference to Plaintiff's constitutional right, and that the policy or custom caused the violation. *See, e.g.*, *Salvani v. Corizon Health, Inc.*, 2018 WL 6590888, at *3 (S.D. Fla. Dec. 14, 2018) (citing *Fisher v. Miami-Dade Cty.*, 114 F. Supp. 3d 1247, 1252 (S.D. Fla. 2015) and *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)). Here, Plaintiff has sufficiently alleged that Wexford had "an unwritten rule, if not an actual policy about minimizing medical treatment to lower costs" and maximize Wexford's profits, even if doing so could result

---

[8] To the extent Plaintiff claims "Wexford is subject to section 1983 liability as a supervisor under theories of respondeat superior or vicarious liability for the actions of its subordinates," D.E. 88 at 9, Plaintiff is wrong. "[R]espondeat superior or vicarious liability is not a basis for recovery on [§ 1983] claims, and a plaintiff must prove a 'policy or custom' led to the violation of his or her constitutional right." *Salvani v. Corizon Health, Inc.*, 2018 WL 6590888, at *3 (S.D. Fla. Dec. 14, 2018); *see also Dunn v. Warden, Ware State Prison*, 2017 WL 5047902, at *3 (11th Cir. Sept. 25, 2017). *Monell* liability here would be based on Wexford's own actions in creating or ratifying a custom, policy, or practice, which in turn was the moving force behind Wexford employees' actions. In this way, the *Monell* theory of liability is not merely holding an employer liable for an injury inflicted by its employees. *See Monell*, 436 U.S. at 694 ("We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

in grossly inadequate medical care and/or delay in medical treatment for non-medical reasons. *See* Compl. ¶ 118; *see also id.* ¶¶ 66–69. Plaintiff has also alleged that Wexford employees delayed treatment, including delaying calling an ambulance (Nurse Rowe and Dr. Gaxiola), or denied post-surgery treatment (Dr. Ortega) because of the cost-cutting policies. *See id.* ¶¶ 66–69, 120, 129, 101–102, 118, 119–120. At this early stage of the case, this is enough.

Wexford, relying heavily on *McDowell*, argues that Plaintiff needed to allege specific facts showing Wexford knew Plaintiff's injuries would be a "plainly obvious consequence" of Wexford's policies. *See* D.E. 78 at 10–14; 392 F.3d at 1292. But *McDowell* speaks in terms of proof, not pleading. *See* 392 F.3d at 1290–94 (analyzing summary judgment testimony and other evidence); *see also Bd. of Cty. Com'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 412 (1997) (reviewing jury verdict for plaintiff and concluding that the evidence was insufficient to show that officer's use of excessive force would be a "plainly obvious consequence" of the hiring decision); *Gold v. City of Miami*, 151 F.3d 1346, 1351 n.10 (11th Cir. 1998) (reviewing jury verdict for plaintiff and discussing the "high standard of proof" that is "intentionally onerous for plaintiffs"). Here, the Court is guided by Federal Rule of Civil Procedure 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." The specifics may be developed through discovery and, if appropriate, the lack of specific evidence showing Wexford's knowledge may form the basis for a summary judgment motion.

However, Plaintiff has not alleged that Dr. Gaxiola's May 10, 2014, actions or inactions were motivated by Wexford's policies. To the extent Plaintiff seeks to fix liability on Wexford for Dr. Gaxiola's May 10th conduct, Plaintiff has not sufficiently stated a claim.

### 3.   Causation

Each Medical Defendant argues that "there are no allegations that Plaintiff's condition resulting from his alleged brutal sexual battery was made worse by [each Medical Defendant's] actions." D.E. 78 at 6; D.E. 79 at 6–7; D.E. 80 at 7; D.E. 125 at 6. D.E. The Court disagrees. Plaintiff sufficiently alleges that, if not for the actions of Nurse Rowe and Dr. Gaxiola on the day of the attack in delaying access to emergency services, as motivated by Wexford's policies, he may not have needed a colostomy. *See* Compl. ¶ 80. Plaintiff also has sufficiently alleged that he suffered from pain and emotional distress resulting from the assault and corresponding pre-surgery response by, *inter alia*, the Medical Defendants. *Id.* ¶¶ 82, 123. As to the post-surgery conduct, Plaintiff has sufficiently alleged that Dr. Ortega (following Wexford policies in denying pain medication) and Dr. Gaxiola (of her own volition) caused Plaintiff to suffer pain, fear, and emotional distress.[9] *See id.* ¶¶ 92–93, 103–104, 123.

### 4.   Negligence as Inconsistent with Deliberate Indifference

Each Medical Defendant also argues that, by using terms like "duty" and "breach" in Count One, Plaintiff has alleged the elements of negligence instead of the elements of a deliberate indifference claim. D.E. 78 at 6–7; D.E. 79 at 7–8; D.E. 80 at 7–8; D.E. 125 at 7. Because deliberate indifference requires "conduct that is more than mere negligence," the Medical Defendants contend, Count One should be dismissed. *See id.* (quoting *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999)). The Court agrees that Count One could have been more artfully pled. Nevertheless, Plaintiff has sufficiently alleged the elements of deliberate indifference: a serious medical need, the Medical Defendants' deliberate indifference to that need, and causation between that indifference and Plaintiff's injuries. *See, e.g.*, Compl. ¶¶ 118–120, 123; *see also Gilmore*, 738 F.3d

---

[9] Notably, however, Plaintiff has not alleged that any post-surgery actions caused Plaintiff to suffer exacerbated physical injury or medical expenses.

at 273–74. And as explained above, Plaintiff has alleged facts that support a plausible inference of more than mere negligence.[10]

### B.   Presuit Notice & Investigation Under Florida Statutes Chapter 766

As to Count II, Chapter 766 "sets out a complex presuit investigation procedure that both the claimant and defendant must follow before a medical negligence claim may be brought in court." *Kukral v. Mekras*, 679 So.2d 278, 280 (Fla. 1996). The purpose of this complex procedure was to "address a legitimate legislative policy decision relating to medical malpractice and establish[] a process intended to promote the settlement of meritorious claims at an early stage without the necessity of a full adversarial proceeding." *Id.* (quoting *Williams v. Campagnulo*, 588 So.2d 982, 983 (Fla. 1991)).

Among other things, the law requires a prospective plaintiff to conduct a presuit investigation to determine whether reasonable grounds exist to believe that someone acted negligently in the plaintiff's medical treatment. Section 766.104(1) states that no action shall be filed for personal injury arising out of medical negligence, unless the attorney filing the action has made a reasonable investigation to determine that there are grounds for a good faith belief that there has been negligence in the care and treatment of the claimant. Fla. Stat. § 766.104(1). The statute also requires that the "complaint or initial pleading . . . contain a certificate of counsel that such reasonable investigation gave rise to a good faith belief that grounds exist for an action against each named defendant." Fla. Stat. § 766.104(1).

After completion of the pre-suit investigation, and prior to filing a complaint for medical negligence, Florida law also requires a claimant to notify each prospective defendant of intent to initiate litigation for medical negligence. Fla. Stat. § 766.106(2)(a). The notice must include

---

[10] Moreover, it is perfectly permissible to plead deliberate indifference and state law negligence in the alternative. *Buckley v. Barbour Cty., Ala.*, 624 F. Supp. 2d 1335, 1344 (M.D. Ala. 2008).

corroboration of reasonable grounds to initiate medical negligence litigation, in the form of a verified written medical expert opinion. Fla. Stat. § 766.203(2). No suit may be filed for a period of 90 days after notice is mailed to any prospective defendant. Fla. Stat. § 766.106(3)(a). During this 90-day period, the statute provides for informal presuit discovery, Fla. Stat. §§ 766.204-205, and requires the prospective defendant to conduct a presuit investigation, § 766.203(3).

The Court finds that, although labeled as an unadorned "negligence" claim, Count II of the Complaint as against the Medical Defendants constitutes a medical negligence claim. *See* Fla. Stat. § 766.106(1)(a) (defining a "claim for medical negligence" as a claim "arising out of the rendering of, or the failure to render, medical care or services"); *see also Corbo v. Garcia*, 949 So. 2d 366, 370 (Fla. 2d DCA 2007) (holding that plaintiff could not show negligence without showing defendants were negligent in their medical treatment of plaintiff; therefore, plaintiff's claim was one for medical negligence and subject to the pre-suit requirements of Chapter 766); *Johnson v. Kats-Kagan*, 2007 WL 221240 (N.D. Fla. Jan. 25, 2007) (recharacterizing "simple negligence" claim as "medical negligence" claim because the alleged wrongful acts were directly related to the improper application of medical services and the use of professional judgment or skill).

Plaintiff does not concede that he failed to comply with Chapter 766's pre-suit requirements, but neither does he assert that he did comply. He merely relies on Rule 9(c)'s pleading standard. The Complaint states: "All conditions precedent necessary to the filing of this action have been satisfied or waived…." Compl. ¶ 34. This generally satisfies Rule 9(c). *See* Fed. R. Civ. P. 9(c) (conditions precedent need only be alleged generally). But Chapter 766 appears to impose demanding, substantive requirements that a plaintiff must satisfy. *See, e.g.*, Fla. Stat. § 766.104(1) (requiring certificate of counsel along with complaint or initial pleading); *id.* § 766.206(2) ("If the court finds that the notice of intent to initiate litigation mailed by the claimant

does not comply with the reasonable investigation requirements…the court shall dismiss the claim."); *see also Pettinga v. Metabolic Research Institute, Inc.*, 2014 WL 12452443, at *3 (S.D. Fla. May 6, 2014) ("Failure to comply with [Chapter 766's] pre-suit requirements mandatorily results in dismissal." (citing *Gutman v. Quest Diagnostics Clinical Labs., Inc.*, 707 F. Supp. 2d 1227, 1332 (S.D. Fla. 2010)). Plaintiff's general allegation that he satisfied conditions precedent does not cure the need to allege facts which if proved would establish compliance with Chapter 766.

Accordingly, Count II of the Complaint is DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND as to the Medical Defendants. Plaintiff shall be afforded the opportunity to prove that, within the statutory limitations period, he took all of the pre-suit investigation and notice requirements to bring his medical negligence claims. Plaintiff must, for example, file a Section 766.104(1) certificate of counsel. However, if Plaintiff has not yet completed the Chapter 766 requirements, Count II will have to be dismissed with prejudice as to the Medical Defendants, as more than two years have passed since the events in the Complaint. *See, e.g.*, *Johnson v. McNeil*, 278 F. App'x 866, 872 & n.3 (11th Cir. 2008) (affirming dismissal with prejudice for failure to comply with Chapter 766 where the statute of limitations had already expired); *R.W. v. Armor Correctional Health Servs., Inc.*, 830 F. Supp. 2d 1295, 1303 (M.D. Fla. 2011) ("Since the applicable two-year statute of limitations for medical malpractice claims has expired. Plaintiff has lost her right to cure her failure to file the pre-suit requirements.").

### C.  The Medical Defendants' Remaining Arguments for Dismissal

Even though the Court is dismissing Count II without prejudice due to failure to allege compliance with Florida Statutes Chapter 766, the Court will briefly address the Medical Defendants' remaining arguments.

#### 1.  Sovereign Immunity Under Florida Statutes § 768.28

First, the Medical Defendants argue that they are immune from suit under Florida Statutes § 768.28(9)(a). That section provides, in pertinent part:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, **unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property**.

Fla. Stat. § 768.28(9)(a) (emphasis added). The Medical Defendants argue that "there are absolutely no allegations that" any of the Medical Defendants "acted with the intent required to remove the shield of immunity." D.E. 78 at 15; D.E. 79 at 8; D.E. 80 at 9; D.E. 125 at 8. This argument fails; just as Plaintiff has sufficiently alleged deliberate indifference, *see supra* Section I.A.2, he has also sufficiently alleged the intent required to overcome statutory immunity.

#### 2.  Presuit Notice Under Florida Statutes § 768.28

Next, the Medical Defendants argue Plaintiff has not pled compliance with the presuit notice requirements under § 768.28(6). That section provides, in pertinent part:

> **(6)(a)** An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also, except as to any claim against a municipality, county, or the Florida Space Authority, presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing…
>
> **(b)** For purposes of this section, the requirements of notice to the agency and denial of the claim pursuant to paragraph (a) are conditions precedent to maintaining an

action but shall not be deemed to be elements of the cause of action and shall not affect the date on which the cause of action accrues.

The statute expressly relates only to actions against the state or one of its agencies or subdivisions. In this action, Plaintiff proceeds against Dr. Gaxiola, Nurse Rowe, and Dr. Ortega in both their official and individual capacities. These defendants fail to explain why the presuit notice requirements of Fla. Stat. § 768.28(6) apply to claims against them in their individual capacities. The statute itself, along with interpretive case law, suggest that the statute does not apply to them individually. *See Medberry v. McCallister*, 937 So. 2d 808, 813 (Fla. 1st DCA 2006) (holding that trial court erred by dismissing complaint for failure to comply with Fla. Stat. § 768.28(6), because defendant sued in individual, not official, capacity); *Hucker v. City of Oakland Park*, 427 So. 2d 244, 254 (Fla. 4th DCA 1983) (holding that notice of claim is prerequisite to maintaining action against municipality, but is not applicable to actions against individuals). This argument for dismissal therefore fails.

This brings the Court to the claims against Dr. Gaxiola, Nurse Rowe, and Dr. Ortega in their official capacities, and the claims against Wexford. The Court agrees that Plaintiff has failed to satisfy the notice requirements of § 768.28(6) as to these Defendants. *See, e.g.*, *Fletcher v. City of Miami*, 567 F. Supp. 2d 1389, 1393–94 (S.D. Fla. 2008) (dismissing complaint without prejudice to allow plaintiff the opportunity to plead that notice was given). When and if Plaintiff amends his complaint to allege compliance with Florida Statutes Chapter 766, he must also allege timely compliance with § 768.28. If he has not already complied with this statute, "the time for providing such notice has expired," and the claim will be dismissed with prejudice. *See id.* at 1393.

### 3. Exhaustion of Administrative Remedies

The Medical Defendants likewise argue that Plaintiff has failed to exhaust his administrative remedies prior to filing suit, in that Plaintiff did not properly follow the inmate

24

grievance procedure located in Chapter 33-103 of the Florida Administrative Code. *See* D.E. 78 at 19–22; D.E. 79 at 12–16; D.E. 80 at 12–16; D.E. 125 at 12–15. Unlike compliance with the Florida statutes, a plaintiff need not specially plead or demonstrate exhaustion of administrative remedies in his complaint. *Jones v. Bock*, 549 U.S. 199, 211–217 ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Plaintiff has sufficiently alleged compliance with all presuit conditions precedent, which (for purposes of pleading) encompasses compliance with the Prison Litigation Reform Act.

### D. Motion to Strike Punitive Damages Claim

Lastly, the Medical Defendants move to strike Plaintiff's punitive damages claim on the ground that Plaintiff has not alleged conduct "motivated by evil intent or involv[ing] callous or reckless indifference to federally protected rights." D.E. 78 at 22–23; D.E. 79 at 16; D.E. 80 at 16; D.E. 125 at 16 (quoting *H.C. by Hewett v. Jarrard*, 786 F.2d 1080, 1089 (11th Cir. 1986)).

The Court will strike the punitive damages claim as to Nurse Rowe, Dr. Gaxiola, and Dr. Ortega in their official capacities under *Colvin v. McDougall*, 62 F.3d 1316 (11th Cir. 1995), and progeny. When a plaintiff brings § 1983 claims against actors in their official capacities, it is "in actuality the same as suing the [government entity] itself," and government entities are immune from punitive damages in federal civil rights suits. *Estate of Coleman, Jr. v. Scott*, 2010 WL 3189528, at *1–2 (M.D. Fla. July 20, 2010); *see also C.P. by and through Perez v. Collier Cty.*, 145 F. Supp. 3d 1085, 1099 (M.D. Fla. 2015) (striking claims against sheriff in his official capacity).

As to Nurse Rowe, Dr. Gaxiola, and Dr. Ortega in their individual capacities, the Court finds that Plaintiff has plausibly alleged reckless indifference to his federally protected rights (his

Eighth Amendment guarantees) and may therefore be entitled to punitive damages. *Cf. Davies v. Israel*, 342 F. Supp. 3d 1302, 1310–11 (S.D. Fla. 2018). Accordingly, the Medical Defendants' Motion to Strike Plaintiff's Punitive Damages Claim is GRANTED IN PART and DENIED IN PART.

## II.    THE CORRECTIONS DEFENDANTS

Defendants Julie Jones, Sgt. Martell, Sgt. Payton, Ofc. Chery, Cpt. Hines, Sgt. Williams, and Ofc. Person (collectively, the "Corrections Defendants") also filed substantially similar Motions. The Court addresses their arguments simultaneously.

The Corrections Defendants argue that the claims against them should be dismissed for the following reasons: (A) as to all Corrections Defendants except Jones, the Complaint does not contain sufficient factual matter to state a claim for relief with respect to those defendants in their individual capacities; (B) as to Julie Jones, the Complaint does not contain sufficient factual matter to state a claim for relief with respect to Jones in either her individual or official capacity; (C) as to all Corrections Defendants except Jones, the official capacity claims are barred by sovereign immunity; (D) Plaintiff has not stated a plausible claim for declaratory relief; and (E) the Corrections Defendants are entitled to qualified immunity. The Corrections Defendants also argue that, should any of the claims survive, Plaintiff's request for punitive damages should be stricken.

### A.  <u>Failure to State a Claim</u>

The claims against the Corrections Defendants are also deliberate indifference and negligence claims. Therefore, the same standards apply as with the Medical Defendants.

#### 1.  <u>Ofc. Chery and Ofc. Person</u>

Plaintiff alleges that Ofcs. Chery and Person "took [Plaintiff] on a two-hour ride before bringing [him]" to JMH. Compl. ¶ 73. He further alleges that JMH is 21.2 miles away from

Everglades CI and, given this proximity, "[t]he transportation from Everglades CI to [JMH] should not have taken two hours except for a deliberate or gross indifference to the medical needs of [Plaintiff] by Chery and Person." *Id.* ¶¶ 75–76. Additionally, Plaintiff challenges the way Ofcs. Chery and Person transported him—*i.e.*, by choosing a van over an ambulance and making Plaintiff lay on the floor of the van, where the movement could further cause internal injuries. his *Id.* ¶¶ 72, 120, 129.

Ofcs. Chery and Person argue that these claims do not establish knowledge or intent. They point to the lack of any specific allegation that they knew of Plaintiff's medical conditions or that they knew Plaintiff was at risk of harm by traveling in a van instead of an ambulance. D.E. 110 at 5–7; D.E. 120 at 5–7. All that is alleged, the officers claim, is mere negligence in not recognizing the serious nature of the condition. *Id.* The officers also contend that Plaintiff failed to allege they had control over the length of time it took to get to JMH or, if they did, that the delay was of such magnitude as to be constitutionally intolerable. *Id.*

Despite these assertions, the Court finds Rule 8 to be satisfied here. The Court agrees with Plaintiff that it is "common sense" that transporting a prisoner to the emergency room on the floor of a van is "not typical procedure." D.E. 119 at 9; D.E. 131 at 9. And Plaintiff was taken to JMH's emergency room at 11:30 p.m.—not typical doctors' hours. *See* Compl. ¶¶ 1, 69. These factual allegations permit an inference that a reasonable officer would have known Plaintiff was suffering a medical emergency and should be treated with care, and that time was of the essence. Plaintiff has sufficiently alleged that there is no possible way for a trip from Everglades CI to JMH to take two hours—particularly at 11:30 p.m., not during rush hour—unless the officers were acting maliciously or recklessly in delaying his transport. *Cf. Newman v. Alabama*, 503 F.2d 1320, 1331 (5th Cir. 1974), *cert. denied* 421 U.S. 948 (1975) (noting that the Fifth Circuit "has repeatedly

reversed dismissals of complaints alleging failure to treat or allowing a protracted period of time to elapse before rendering treatment" and ruling that inadequate emergency and referral procedures are "deemed to be of constitutional import").

Plaintiff has sufficiently alleged causation by claiming that his treating doctor told him he would not have needed a colostomy if he had been brought to JMH sooner. Compl. ¶ 80. And Plaintiff has sufficiently alleged that he suffered damages, including pain and suffering. *See id.* ¶¶ 123, 132. Plaintiff therefore states a claim for deliberate indifference or, in the alternative, negligence.

### 2.   Cpt. Hines, Sgt. Martell, Sgt. Payton, and Ofc. Williams

The only allegations as to Cpt. Hines, Sgt. Martell, Sgt. Payton, and Ofc. Williams relate to Plaintiff's third incident of post-surgery excessive bleeding on May 12, 2014. The sum of the allegations is: (1) Plaintiff called a medical emergency at approximately 2:45 p.m. due to his excessive bleeding; (2) Cpt. Hines, Sgt. Martell, Sgt. Payton, and Ofc. Williams arrived at Plaintiff's cell; (3) Cpt. Hines said "Next time he has a medical emergency, leave him be, maybe he'll bleed to death"; (4) the Defendants intentionally ignored Plaintiff's medical needs, failing to take any steps to send Plaintiff to the medical unit, and intending that he suffer and experience unnecessary harm; (5) Plaintiff passed out due to his excessive bleeding; and (6) after seeing the Defendants doing nothing but standing in front of Plaintiff's cell, with Plaintiff being unresponsive, non-party Sgt. Gomez declared a medical emergency. *Id.* ¶¶ 94–98, 107.

Cpt. Hines, Sgt. Martell, Sgt. Payton, and Ofc. Williams each argue that Plaintiff failed to allege that "Plaintiff's bleeding was visibly observed by [each] to be excessive, and that [each] recognized it to be excessive and serious or even should have recognized the same." They also argue that Plaintiff could not possibly allege that these Defendants did nothing because Plaintiff

purportedly was unconscious: "He cannot know who ordered him to the infirmary if he were passed out as claimed." These Defendants also argue Plaintiff has not alleged they had sufficiently culpable states of mind.

The Court rejects these arguments. Plaintiff has sufficiently alleged that Cpt. Hines, Sgt. Martell, Sgt. Payton, and Ofc. Williams displayed deliberate indifference to a serious medical need by failing to render any treatment whatsoever despite Plaintiff's excessive bleeding. For pleading purposes, Cpt. Hines' alleged reference to "bleed[ing] to death" supports an inference that he, Martell, Payton, and Williams were aware that Plaintiff's bleeding was excessive. And common sense dictates that when a corrections officer sees an inmate bleeding, the officer should take at least some action to render medical care. This common-sense conclusion is even more obvious when the bleeding inmate passes out. The allegation that the Defendants were "doing nothing but standing in front of [Plaintiff's] cell" in the face of Plaintiff's excessive bleeding permits an inference of reckless indifference, if not more. With respect to Cpt. Hines, the claims support an inference of actual malice based on his "maybe he'll bleed to death" statement. And as explained above, failure to treat or delay treatment can constitute a constitutional injury.

Plaintiff also has sufficiently alleged that these Defendants' conduct caused him injury, to include pain and suffering. His claims also amount to negligence, in the alternative. Of course, this does not mean that the claims will survive summary judgment—Plaintiff will have to develop the facts further in discovery.

### 3.  Jones

The claims against Jones pertain not only to the cost-cutting policy for medical treatment, but also to the practice of failing to equip Everglades CI with adequate security measures (video

cameras) and properly trained and experienced corrections officers. The latter practice allegedly caused, at least in part, the initial attack on Plaintiff.

Plaintiff has stated a claim against Jones based on the alleged joint policy with Wexford to cut medical costs at the risk of mistreating inmates. But as with Wexford, Plaintiff has not alleged that Jones' policy caused all of the alleged actions by the individual Correctionsl Defendants. Plaintiff has not alleged that any corrections officers' actions toward Plaintiff post-surgery were motivated by the cost-cutting policy nor by any other action or policy implemented by Jones. Instead, Plaintiff has only stated a claim against Jones as to the pre-surgery delay in treatment and transport by van instead of ambulance.

As to the inadequate safety measures, Plaintiff has also stated a claim. Prison officials may be found deliberately indifferent to an obvious, substantial risk to inmate safety, including a risk of assault by other inmates. *See, e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994). A prison official can be held liable if the official (1) knows and disregards an excessive risk to inmate health or safety, (2) is aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and (3) actually draws that inference. *Id.* at 837. Jones protests that the Complaint lacks specific facts establishing her notice or awareness that Everglades CI lacked sufficient cameras or sufficiently trained staff. D.E. 81 at 5–9. But at the pleading stage, knowledge and intent may be alleged generally. Fed. R. Civ. P. 9(b). Plaintiff's allegations permit an inference that Jones—as the individual responsible for the operation of FDOC prison facilities, including Everglades CI—was aware of the systemic lack of security that allegedly resulted in the attack. *See* Compl. ¶¶ 8, 27–28, 38–42, 117, 122, 126, 131. Plaintiff likewise states a claim for negligence in the alternative.

### B.  Qualified Immunity

Section 1983 creates a private right of action against persons who, under color of law, subject a plaintiff to a deprivation of federally-protected rights. 42 U.S.C. § 1983. But when a plaintiff seeks to recover from a government official under § 1983, that official may claim qualified immunity so long as they acted within their discretionary authority and did not violate a clearly-established right. The purpose of qualified immunity is to give "government officials breathing room to make reasonable but mistaken judgments." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011). To that end, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

When raised on a motion to dismiss, the question of qualified immunity is resolved according to the facts alleged in the plaintiff's complaint. *See Williams v. Ala. State Univ.*, 102 F.3d 1179, 1182 (11th Cir. 1997) (applying doctrine of qualified immunity to plaintiff's allegations on motion to dismiss complaint). As on a Rule 12(b)(6) motion to dismiss the complaint for failure to state a claim, the Court takes the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Edwards v. Prime Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). The Court does not view each fact in isolation, however, but considers the complaint in its entirety. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

To determine whether a defendant is entitled to qualified immunity, the Court examines the facts of the complaint and first determines whether the defendant was a government official acting within the scope of his or her discretionary authority. Discretionary acts include all acts undertaken pursuant to the performance of the official's duties and within the scope of his or her authority. *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994). In a conclusory manner, Plaintiff here alleges that the Defendants "acted outside the scope of his/her duties and in an arbitrary

manner," Compl. ¶ 26. The Court nevertheless concludes that the facts alleged support an inference that the Defendants in fact were operating within the scope of their discretionary authority.

Where the defendant is an official performing discretionary acts, the defendant is entitled to qualified immunity unless the facts of the complaint show (1) that the defendant's acts violated the Constitution, and (2) that the unconstitutionality of the defendant's acts was clearly established at the time of the incident. *Hoyt v. Cooks*, 672 F.3d 972, 977 (11th Cir. 2012); *see also Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) ("The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). The contours of the right must be sufficiently clear, such that the unlawfulness of the official's conduct is apparent. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "[D]ecisions of the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state (here, the Supreme Court of Florida) can clearly establish the law." *McClish v. Nugent*, 483 F. 3d 1231, 1237 (11th Cir. 2007) (citing *Marsh v. Butler County*, 268 F.3d 1014, 1032 n.10 (11th Cir. 2001) (en banc)).

### 1. Ofc. Chery and Ofc. Person

As explained above, Plaintiff adequately alleges that Officers Chery and Person acted with deliberate indifference toward his serious medical needs, thereby violating his constitutional rights. Further, at the time of their actions, decisional law had clearly established Plaintiff's constitutional right to not have his necessary medical treatment delayed, as well as his constitutional right to be safely transported to the hospital. *Cf. King v. Reap*, 269 F. App'x 857, 860–61 (11th Cir. 2008) ("the sending away of [an] ambulance and the resulting delay in medical attention" violated plaintiff's constitutional rights); *Morales Feliciano*, 13 F. Supp. 2d 151, 191–92 (D.P.R. 1998)

(noting that "[t]he standard of care to prevent morbidity is a fifteen to twenty minute wait for an ambulance" and "[i]ncreased morbidity, deterioration of conditions, [and] increased symptoms such as pain and suffering are all caused by delays in transporting an inmate to an emergency room").

### 2.   Cpt. Hines, Sgt. Martell, Sgt. Payton, and Officer Williams

Plaintiff also adequately alleges that Cpt. Hines, Sgt. Martell, Sgt. Payton, and Officer Williams acted with deliberate indifference toward his serious medical needs, and that his constitutional right to not have necessary medical treatment delayed or withheld for non-medical reasons was clearly established. *See, e.g.*, *Melton v. Abston*, 841 F.3d 1207, 1226–32 (11th Cir. 2016); *see also Alsobrook v. Alvarado*, 477 F. App'x 710, 713 (11th Cir. 2012) (constitutional right to timely treatment for continuous bleeding was clearly established).

### 3.   Jones

Likewise, Plaintiff adequately alleges that Jones acted with deliberate indifference toward his safety and toward his serious medical needs. At the time of her implementation of the alleged policies and practices (i.e., of medical cost-cutting, lack of surveillance cameras, and inadequately staffed/inadequately trained security guards), decisional law clearly established his constitutional rights to not have medical care delayed or withheld for non-medical reasons and to be adequately protected from a substantial risk of attack from other inmates. *See, e.g.*, *Farmer*, 511 U.S. at 833–34; *Melton*, 841 F.3d at 1226–32.

### C.   **The CorrectionsDefendants' Additional Arguments for Dismissal**

#### 1.   Sovereign Immunity and Presuit Notice Under Florida Statutes § 768.28

Like the Medical Defendants, the Corrections Defendants also claim sovereign immunity under Florida Statutes § 768.28. As against the Medical Defendants in their individual capacities, this argument fails for the same reasons explained in Section I.C.1 above.

However, to the extent the any Defendants are sued in their official capacities, the Court again recognizes that Plaintiff failed to establish compliance with the presuit notice requirements in § 768.28(6). The Court imports its analysis in Section I.C.2, *supra*, and concludes that Count II should be DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND as to the Corrections Defendants in their official capacities. If Plaintiff has not timely complied with the notice requirements, the claim will be dismissed with prejudice—by now, it is too late to cure the notice deficiency.

### 2.   Damages Unavailable Under § 1983 in Official Capacity Claims

The Corrections Defendants assert, and Plaintiff concedes, that defendants sued in their official capacity in § 1983 actions are not subject to monetary damages because such parties are not considered "persons" under the statute. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Besselaar v. Siegelman*, 2001 WL 936196, at *7–8 (S.D. Ala. May 2, 2001); *see also Free v. Granger*, 887 F.2d 1552, 1557 (11th Cir. 1989) (explaining that state officials cannot be sued in their official capacity for damages under § 1983 because "any damage award would be paid out of the state treasury, an impermissible occurrence under our constitutional scheme").

Though only the Corrections Defendants raised this argument, the Court finds it equally applicable to the Medical Defendants. Accordingly, the claim for damages in Count I, ¶ 124(a), is STRICKEN as to the Defendants in their official capacities. However, the damages claim survives as to the Defendants in their individual capacities.

### 3.   The Prayer for Declaratory Relief Will Be Stricken

In the Wherefore clause following Count 1, Plaintiff seeks, *inter alia*, "A judgment declaring that the Defendants' have exhibited deliberate indifference to the serious medical needs of the Plaintiff and have violated Plaintiff's right to be free from cruel and unusual punishment, as secured by the Eighth and Fourteenth Amendments to the Constitution." Compl. ¶ 124(d). The Court agrees with the Correctional Defendants that this request is inappropriate. Declaratory judgments are appropriate only where there is a substantial <u>continuing</u> controversy between the adverse parties. *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985). Here, Plaintiff has not alleged any facts to suggest that Defendants' conduct "has continued or will be repeated in the future" as to him, *see id.*, particularly as he is no longer incarcerated at Everglades CI.[11] A declaration that the Defendants' past conduct violated Plaintiff's constitutional rights and Florida law "would be nothing more than a gratuitous comment without any force or effect." *Id.* (quoting *N. Va. Women's Med. Ctr. v. Balch*, 617 F.2d 1045, 1049 (4th Cir. 1980) (alteration omitted)). The Court will strike this paragraph.

4. <u>The Prayers for Injunctive Relief Will Be Stricken and, As a Result, There is No Available § 1983 Remedy as to Defendants in their Official Capacities</u>

As explained above, Plaintiff cannot recover damages under § 1983 against the Defendants in their official capacities, nor is Plaintiff entitled to a declaratory judgment. Jones also objects to Plaintiff's standing to seek injunctive relief, because Plaintiff is no longer in Everglades CI custody and is unlikely to suffer the future harm that his proposed injunction would address. This objection is well-taken. *Cf. Smith v. Sec'y, Dep't of Corrections*, 602 F. App'x 466, 470–71 (11th Cir. 2015)

---

[11] Plaintiff lacks standing to "protect other inmates' interests." *See, e.g.*, D.E. 121 at 15.

(though plaintiff sufficiently alleged prison policy of unnecessary teeth extractions, he lacked standing to seek injunction against future extractions as he was in no immediate danger).

Though only Jones raises this argument, the Court finds it equally applicable to all Defendants. The Court will strike the prayers for injunctive relief in Complaint ¶¶ 124(e) and 133(c). And because all of Plaintiff's requested § 1983 remedies are unavailable as to Defendants in their official capacities, the § 1983 official capacity claims must be dismissed.

### D.  <u>Motion to Strike Punitive Damages Claim</u>

For the reasons set forth in Section I.D above, the Court will permit the punitive damages claim to proceed against the Corrections Defendants in their individual capacities.

### <u>CONCLUSION</u>

For the foregoing reasons, it is hereby

ORDERED AND ADJUDGED as follows:

1. Paragraphs ¶¶ 124(d), 124(e), and 133(c) of the Second Amended Complaint, **D.E. 72**, are STRICKEN.

2. Wexford's Motion, **D.E. 78**, is GRANTED IN PART AND DENIED IN PART as follows: Count I shall proceed against Wexford, but is dismissed insofar as Plaintiff would fix liability on Wexford for Dr. Gaxiola's May 10, 2014, conduct, as Plaintiff has not alleged that this conduct was taken pursuant to Wexford's policies or practices. Count II is dismissed without prejudice and with leave to amend <u>if and only if</u> Plaintiff can show compliance with the presuit notice requirements imposed by the Florida Statutes.

3. Dr. Ortega's Motion, **D.E. 79**, is GRANTED IN PART AND DENIED IN PART as follows: Count I is dismissed against Dr. Ortega in his official capacity, but shall proceed against Dr. Ortega in his individual capacity. Count II is dismissed without prejudice and with leave to amend <u>if and only if</u> Plaintiff can show compliance with the presuit notice requirements imposed by the Florida Statutes.

4. Nurse Rowe's Motion, **D.E. 80**, is GRANTED IN PART AND DENIED IN PART as follows: Count I is dismissed against Nurse Rowe in his official capacity, but shall proceed against Nurse Rowe in his individual capacity. Count II is dismissed without prejudice and with leave to amend <u>if and only if</u> Plaintiff can show compliance with the presuit notice requirements imposed by the Florida Statutes.

5.  Jones' Motion, **D.E. 81**, is GRANTED IN PART AND DENIED IN PART as follows: Count I is dismissed against Jones in her official capacity. Count I shall proceed against Jones in her individual capacity, but is dismissed insofar as Plaintiff would fix liability on Jones for any post-surgery conduct, as Plaintiff has not alleged that such conduct was taken pursuant to Jones' policies or practices. Count II is dismissed without prejudice and with leave to amend <u>if and only if</u> Plaintiff can show compliance with the presuit notice requirements imposed by the Florida Statutes.

6.  Sgt. Martell's Motion, **D.E. 102**, is GRANTED IN PART AND DENIED IN PART as follows: Count I is dismissed against Sgt. Martell in his official capacity, but shall proceed against Sgt. Martell in his individual capacity. Count II is dismissed without prejudice and with leave to amend <u>if and only if</u> Plaintiff can show compliance with the presuit notice requirements imposed by the Florida Statutes.

7.  Sgt. Payton's Motion, **D.E. 109**, is GRANTED IN PART AND DENIED IN PART as follows: Count I is dismissed against Sgt. Payton in his official capacity, but shall proceed against Sgt. Payton in his individual capacity. Count II is dismissed without prejudice and with leave to amend <u>if and only if</u> Plaintiff can show compliance with the presuit notice requirements imposed by the Florida Statutes.

8.  Ofc. Chery's Motion, **D.E. 110**, is GRANTED IN PART AND DENIED IN PART as follows: Count I is dismissed against Ofc. Chery in her official capacity, but shall proceed against Ofc. Chery in her individual capacity. Count II is dismissed without prejudice and with leave to amend <u>if and only if</u> Plaintiff can show compliance with the presuit notice requirements imposed by the Florida Statutes.

9.  Cpt. Hines's Motion, **D.E. 114**, is GRANTED IN PART AND DENIED IN PART as follows: Count I is dismissed against Cpt. Hines in his official capacity, but shall proceed against Cpt. Hines in his individual capacity. Count II is dismissed without prejudice and with leave to amend <u>if and only if</u> Plaintiff can show compliance with the presuit notice requirements imposed by the Florida Statutes.

10. Sgt. Williams's Motion, **D.E. 117**, is GRANTED IN PART AND DENIED IN PART as follows: Count I is dismissed against Sgt. Williams in his official capacity, and shall proceed against Sgt. Williams in his individual capacity. Count II is dismissed without prejudice and with leave to amend <u>if and only if</u> Plaintiff can show compliance with the presuit notice requirements imposed by the Florida Statutes.

11. Ofc. Person's Motion, **D.E. 120**, is GRANTED IN PART AND DENIED IN PART as follows: Count I is dismissed against Ofc. Person in his official capacity, but shall proceed against Ofc. Person in his individual capacity. Count II is dismissed without prejudice and with leave to amend <u>if and only if</u> Plaintiff can show compliance with the presuit notice requirements imposed by the Florida Statutes.

12. Dr. Gaxiola's Motion, **D.E. 125**, is GRANTED IN PART AND DENIED IN PART as follows: Count I is dismissed against Dr. Gaxiola in her official capacity, but shall proceed against Dr. Gaxiola in her individual capacity. Count II is dismissed without prejudice and

with leave to amend <u>if and only if</u> Plaintiff can show compliance with the presuit notice requirements imposed by the Florida Statutes.

13. If Plaintiff can show compliance with the presuit notice requirements, he may file a third amended complaint **no later than Tuesday, March 12, 2019**. If Plaintiff elects to file a third amended complaint, he must also file a redline comparison as against the second amended complaint.

14. If Plaintiff does not timely file a third amended complaint, the Defendants SHALL file their answers to the second amended complaint **no later than Friday, March 15, 2019**.

DONE AND ORDERED in Chambers at Miami, Florida, this _4th__ day of March, 2019.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided:
counsel of record via CM/ECF